# 𝔕𝔦𝔠𝔥𝔪𝔬𝔫𝔡

JAMES KING v. COMMONWEALTH.

January 16, 1936.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Eggleston, JJ.

The opinion states the case.

*W. W. Venable,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Edwin H. Gibson, Assistant Attorney-General,* for the Commonwealth.

CAMPBELL, C. J., delivered the opinion of the court.

The accused was tried upon an indictment which charged him with rape upon one Essie Hall. Upon his trial he was found guilty by the jury, who fixed his punishment at ten years in the penitentiary. The motion to set aside the verdict was overruled and the judgment was pronounced in accordance with the verdict.

The case of the Commonwealth as determined by the verdict of the jury rests upon these facts:

The prosecutrix, Essie Hall, a negro woman, thirty-two years of age, who had been married for six years, but at the time of the occurrence was separated from her husband, went to visit a friend, Daisy Neal, who resided in the city of Norfolk. While in her home the defendant, James King, came in and inquired for another man. The prosecutrix had never seen the defendant prior thereto; while waiting until it was time for her to keep an engagement with a male acquaintance, the defendant engaged her in conversation and asked her if she could love him, whereupon she answered and said that she did not know him sufficiently well to know whether she could even like him or not. After this conversation prosecutrix left the home of Daisy Neal for the purpose of meeting her friend at her home; it was night and she had proceeded in a direct route to her home along Smith street until she came to a point near a cemetery; at this point the defendant came up behind her, grabbed her by the throat and dragged her between two houses; he then threw her to the ground, choked her and raped her, despite her utmost resistance. After King released

her, he jumped to his feet and ran; she went back to the home of Daisy Neal and told her what had occurred and exhibited her clothing and finger prints on her throat and a contusion of her left eye.

The clothing of prosecutrix was introduced in evidence. The dress did not appear to be torn or stained, but her underclothing, a slip and drawers, presented the appearance of having been dragged on the ground, and holes in both garments were observed. Daisy Neal corroborated the evidence of prosecutrix as to the occurrence in her home and the condition of prosecutrix when she informed her what had occurred.

It further appears that prosecutrix, while testifying, was asked this question: "Did the defendant have intercourse with you?" Her answer was in the affirmative.

It also appears that after ascertaining the name of defendant, prosecutrix had a warrant issued for his arrest the morning after the assault.

In rebuttal of evidence attacking the character of prosecutrix, her employer testified that prosecutrix had been in her employ for seven years and bore a good reputation.

The defendant, testifying as a witness in his own behalf, denied *in toto* the statements of the prosecutrix as to the alleged rape, but stated that he accompanied prosecutrix on her way home for an immoral purpose and that he struck her with his fist in order to prevent her from picking his pocket which contained a ten dollar bill.

However, under the well recognized rule in Virginia, that the verdict of the jury settles all conflicts in the evidence, and the jury having found against the defendant, we are only concerned with a solution of the question raised by defendant, viz.: that the evidence is not sufficient to justify a conviction, as there is no evidence of penetration upon the part of the defendant. In support of this contention it is argued that "nowhere is there any evidence to show a most necessary element to sustain a charge of rape, that is to say, *res in re,* but that the most that can be said from the evidence is that the

prosecutrix testified that she was raped and that she had intercourse with the defendant; that the word rape is a legal term constituting a crime, and at its best, a conclusion of law; that the use of the word intercourse is not sufficient to sustain the fact that actual sexual intercourse, which carries with it penetration, took place."

■ ■ To constitute rape other than statutory rape, there must be unlawful carnal knowledge by a man of a woman, forcibly and against her will. It is thus seen that there must appear three facts: (a) carnal knowledge; (b) force; (c) against the will of the woman, before there can be rape. Carnal knowledge means sexual intercourse and is complete upon proof of penetration of the female organ by the male organ, however slight.

In the instant case, if we concede there was penetration, there is overwhelming proof that the defendant resorted to force to overcome the will of the prosecutrix; hence, there is no necessity to enter upon a discussion of elements "b" and "c."

In support of their contention that proof of penetration is lacking, counsel cite the case of *People* v. *Howard,* 143 Cal. 316, 76 Pac. 1116, 1117. In that case it appears that the prosecution was for statutory rape upon a girl sixteen years of age, and the Commonwealth relied upon the evidence to show penetration. The prosecutrix was asked, "Did the defendant have intercourse with you during the month of August in that tent?" The witness answered, "Yes, sir." The witness further testified: "That took place on this side of the stove. There was a cot there. There is where it took place." In holding that the proof was insufficient, the court said: "This is all the evidence in the record as to the act claimed to constitute the crime of rape, except the evidence of the defendant, who testified that he never at any time had sexual intercourse with the prosecuting witness. 'Intercourse' means a commingling; intimate connections or dealings between persons or nations, as in common affairs and civilities, in correspondence or trade; communication; commerce;

especially interchange of thought and feeling; association; communion.' Webster's Dict. There was testimony to the effect that the prosecuting witness was often in the defendant's tent; that she sometimes sat on his lap and read to him. This may have been the intercourse referred to in the answer to the leading question of the district attorney. The fact that the district attorney appears to have asked a prior question as to 'sexual intercourse' does not assist the evidence. Such question was not answered."

█ If the question were one of first impression with us we would still be unwilling to follow the argument of the court. The definition of "intercourse" quoted from Webster's Dictionary is but a partial quotation, and in our opinion had no reference to the matter under investigation. In construing words we should give to them their ordinary meaning when employed in regard to a specific matter. There, the matter under investigation was whether or not the defendant had had sexual intercourse with the prosecutrix. A further examination of Webster shows that intercourse also means "sexual connection; coition."

█ █ Whatever the rule elsewhere, it is with us a settled doctrine that while a jury will not be permitted to draw an inference based upon a presumption, a jury is permitted to draw an inference from the facts and circumstances shown in the evidence. In the trial of the instant case, when it appeared from the evidence that the prosecutrix was violently assaulted from behind, grabbed by the throat, dragged from the pathway, thrown to the ground, choked, her undergarments torn and her face battered and bruised, it does not require the assistance of a logician or lexicographer to lead the jury to' infer that when the prosecutrix said she was *raped* that she meant anything other than that the defendant had committed an act of sexual intercourse with her. When we consider her statement that the defendant had intercourse with her under the facts above narrated, it would strain

our credulity to reach the conclusion that she meant anything else than "sexual connection."

While it is essential to show force and penetration upon a charge of rape, we are unwilling to promulgate a rule of law that requires an unoffending female to lay bare the facts of her ravishment to the extent of showing its accomplishment in all its sordid details.

In *Rowland* v. *Commonwealth,* 147 Va. 636, 638, 136 S. E. 564, 565, it is said:

"The chief assault upon the testimony for the Commonwealth is that it does not show penetration. It is true that the girl herself testified that she did not know whether there was penetration or not, but she also testified that he hurt her, that his conduct towards her had been going on several times a week 'for some time,' and that he was 'the cause of her sickness.' It is conceded by the Attorney-General that there can be no conviction of rape without evidence of penetration, but whether there was penetration or not was a question for the jury upon the evidence in the case."

A case very much in point is *Bailey* v. *Commonwealth,* 82 Va. 107, 109, 3 Am. St. Rep. 87. The defendant was convicted of rape and sentenced to the penitentiary for a term of ten years. The proof showed that defendant entered the bed of his fourteen-year-old step-daughter; that the prosecutrix forbade the defendant from getting in bed with her but made no further resistance; that the prisoner "held her hands and brought his private parts in contact with her private parts and forced her." It was argued that the testimony does not prove the act of penetration; that the language "forced her" has no legal signification; it means nothing; that defendant may have "forced her" to do one thing or another; that it is too general, too indefinite. In disposing of the question the court said: "But it is objected that the words used do not prove penetration of her body. Penetration is essential to complete this crime, and if there is no penetration there is no rape. But what is essential to the proof

of penetration? It is proved in this case that the prisoner, getting into bed with the object of his desires, held her hands, brought his private parts in contact with her private parts, and *forced her*. The word penetration is not used; neither is it used in the received definition of the crime of rape stated above, and to be found in all the authorities, nor is it used in the statute cited. While it is an essential element of the crime of rape, and without it there can be no rape, yet proof of the carnal knowledge of a female against her will by force, is proof of rape."

In our opinion the accused, James King, has had a fair and impartial trial, the evidence warrants the verdict found by the jury, confirmed by an able and experienced judge, and the judgment should be affirmed.

*Affirmed.*