**Michael SIMMONS, Defendant Below, Appellant,**

v.

**STATE of Delaware, Appellee.**

Supreme Court of Delaware.

Submitted June 15, 1982.

Decided July 20, 1982.

ary 1979, which was before any of the events here in issue transpired.

William M. Chasanov, and Thomas David Hunter Barnett (Argued), Brown, Shiels & Chasanov, Georgetown, for appellant.

John P. M. Sandy, and Gary A. Myers (Argued), Deputy Attys. Gen., Georgetown, for appellee.

Before QUILLEN, HORSEY and MOORE, JJ.

MOORE, Justice:

This appeal from a conviction of rape in the first degree[1] and kidnapping in the second degree[2] requires us to decide if the trial court erred in unduly restricting defense counsel's cross-examination of the rape victim. We must also decide if there was sufficient evidence to sustain the kidnapping charge. Defendant was convicted by the Superior Court sitting without a jury following an earlier mis-trial before another judge.

At the time of the events in question the complaining witness, Judy, was 20 years old. Shortly after midnight on December 27, 1980, Judy was driving alone in her car, and while she was stopped at an intersection, the defendant, Michael Simmons, who she had not met previously, jumped into Judy's car through an unlocked door on the passenger side. He demanded that she take him to a nearby town. Being afraid, Judy acquiesced and headed in the direction designated by the defendant. After driving for about fifteen minutes, Simmons ordered her to stop the car in a deserted area. He then told her to take off her pants at which point Judy feigned illness to get Simmons out of the car so that she could escape. Simmons climbed over her, got out of the car on the driver's side, and stood on the inside against the door, while holding it open for Judy in the event she was ill.

When it became evident that Judy was not sick, Simmons shoved her to the passenger side and claimed the driver's seat for himself. He again told her to pull down her pants. When she did not do so, Simmons pulled them down, removed her boots, and threw Judy's clothing into the back seat. He then took off his pants and consummated an act of sexual intercourse with Judy on the front seat of her car.

Afterward, Judy apparently drove back to town, and to get Simmons out of the car she promised to meet him again the next night. When Simmons departed she went home, and in a serious state of agitation related the preceding events to her parents. Her mother testified that upon arriving home, Judy "looked terrible" and cried continuously. The police were called, and Judy was taken to a hospital. When the police arrived she was still in a very emotional state. Indeed, for weeks thereafter Judy experienced crying, nervousness and nightmares. Simmons was later arrested and identified by Judy as her assailant.

---

1. 11 *Del.C.* § 764. Rape in the First Degree. "A male is guilty of rape in the first degree when he intentionally engages in sexual intercourse with a female without her consent, and:
   (1) In the course of the offense he inflicts serious physical, mental or emotional injury upon the victim, or
   (2) The victim was not the defendant's voluntary social companion on the occasion of the crime and had not previously permitted him sexual contact."

2. 11 *Del. C.* § 783 defines this offense in pertinent part:
   "A person is guilty of kidnapping in the second degree when he unlawfully restrains another person with any of the following purposes:
   
   \* \* \* \* \* \*
   
   (4) To inflict physical injury upon him, or to violate him or abuse him sexually; ...
   
   \* \* \* \* \* \*
   
   and the actor voluntarily releases the victim, alive, unharmed and in a safe place prior to trial."

After being advised of his Miranda rights, Simmons made several exculpatory statements to the police, the thrust of which were admissions of sexual relations with Judy at the time and place she described, but that the act was consensual on her part.

Throughout the trial Simmons' defense was Judy's alleged consent.[3] During Judy's direct examination by the State she denied the suggestion of consent by her, and in describing the incident she testified:

"Q. After he took his pants off, what did he do?

A. Raped me.

Q. What do you mean by the term rape? What did he do to you?

A. Penetrated.

Q. So he penetrated. What did he penetrate?

A. Well, what do you think?

The Court: You don't have to be this specific. We know what rape means.

(Prosecutor) Thank you

(Defense Counsel) Excuse me. If that's the Court's position, I object.

The Court: Your objection is overruled."

From this direct examination, and very general objection, the defense now attempts to contrive an argument of major constitutional proportion by claiming that Simmons was denied the right of confrontation and the right to cross-examine Judy whether any penetration in fact had occurred.

■ Since consent was the defense to the charge of rape, it is anomalous that defendant now challenges the element of penetration. We find this contention meritless for several reasons.

First, there is no showing whatever that the defendant was denied any right of cross-examination. As noted, the trial court's comments occurred during direct, not cross-examination. The record is clear that no effort whatever was made by Simmons' counsel to pursue the subject of penetration on cross-examination. Constitutional issues are not created or presented by such a contrivance.

Second, the ruling of the trial court that the complaining witness did not have to go into extensive detail on direct examination, concerning what she meant by being "raped" or that the defendant "penetrated" her, is a well established principle of law. As was stated in *King v. Commonwealth*, Va.Supr., 165 Va. 843, 183 S.E. 187, 189 (1936):

"... it does not require the assistance of a logician or lexicographer to lead the jury to infer that when the prosecutrix said she was raped that she meant anything other than that the defendant had committed an act of sexual intercourse with her."

See also *State v. Moorer*, S.C.Supr., 241 S.C. 487, 129 S.E.2d 330, 336 (1963).

Moreover, aside from Judy's direct testimony as to penetration, which was never challenged on cross-examination there were defendant's own testimony and his statements to the police, admitting that he had "sex" with Judy.[4]

Third, the defendant's counsel cross-examined Judy at length, but again, the thrust of it was on the issue of consent. By its very nature this defense and the extent to which defendant's counsel pursued it on cross-examination inherently concede the occurrence of an act of sexual intercourse. Furthermore, in his post trial written submissions to the trial judge Simmons' counsel said nothing about being denied the right of confrontation or cross-examination. Again, counsel emphasized the defense of consent:

---

**3.** At defendant's first trial his counsel stated in opening argument:

"... as far as I am concerned, the theme of the case, from the defense point of view, is whether this was, in fact, without consent, as without consent is defined in the statute." This position was reiterated again by defense counsel at the second trial.

**4.** Simmons testified on direct:

"Q. Did you have sex with her?

A. Yes

Q. Then what happened?

A. That's it.

Q. After you had sex?

A. After we had sex we got up."

"Prior to trial defendant filed a motion that the wording of 'without consent' as defined in (11 *Del.C.* § 767) would not be met by the State and the matter should be dismissed."

Defense counsel also argued that this case should more properly "be characterized as a young man taking advantage of a young girl with later regret on (her) part", and that Judy should "accept some of the consequences of her behaviour ... and not to try to shift the responsibility to the male for what is normal behaviour among many young men and has been through the centuries."

Thus, it is apparent that nothing in the record established this latter day claim of a restriction upon cross-examination into an issue, which the record discloses was at best wholly foreign to Simmons' defense.[5]

Since consent was the hallmark of the defense in this case, even if penetration had not been proved by the victim's testimony, the defendant's testimony and his statements to the police, that sexual intercourse occurred, makes error, if any, irrelevant.[6]

■ Finally, defendant contends that he was wrongfully convicted of the charge of kidnapping in the second degree because there was no indication that a weapon had been used or that Judy had been physically injured. But the law is not so limited. The evidence of the sexual violation and its surrounding circumstances amply support this conviction. These facts clearly show substantial interference with Judy's liberty to support the conclusion that Simmons unlawfully restrained her for the purpose of violating or abusing her sexually.[7] *Burton v. State*, Del.Supr., 426 A.2d 829 (1981); *Tyre v. State*, Del.Supr., 412 A.2d 326 (1980).

Based upon the foregoing, we conclude that defendant's convictions are supported by evidence sufficient for the trial judge to have found guilt beyond a reasonable doubt.

AFFIRMED.

---

**5.** Of course if the issue of penetration, rather than consent, had been the defense, and defense counsel had attempted to pursue cross-examination on the subject, but was denied the same by the Court, then a valid constitutional question would have been raised.

**6.** We note that defendant's brief initially challenged the admissibility of his pre-trial statements, but later such claims were withdrawn before us.

