Richmond
DAVID ALLEN LAWSON
v.
COMMONWEALTH OF VIRGINIA
No. 0102-90-2
Decided September 17, 1991

COUNSEL

Scott Goodman, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

BAKER, J.—David Allen Lawson (appellant) appeals from judgments of the Circuit Court of Charlottesville (trial court) which approved four jury verdicts convicting him of two counts of rape, breaking and entering a dwelling with intent to rape, and sodomy. Appellant alleges that the evidence is not sufficient to prove the offense of sodomy, and that the trial court erred when it refused to instruct the jury at the conclusion of the presentation of the evidence not to discuss the case until after instructions had been given and final arguments made. Appellant further alleges that the trial court erred when it failed to grant appellant's motion for a mistrial when the prosecutor told the jury to consider appellant's record when deciding what punishment it would recommend.

Guided by well established principles, we view the evidence in a light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). On May 4, 1989, the victim was asleep in her apartment in Charlottesville when she was awakened by appellant kissing her on her cheek as he "straddled" her body. When she screamed, appellant grabbed her throat, placed a "sharp, cold object" against it, and warned her to be quiet. Appellant then proceeded to remove victim's clothing. When she protested, appellant told her to shut up or he would shove his knife down her throat. On at least two occasions, he put his hands on her throat as if he were going to choke her.

After removing all the victim's clothing, appellant laid her on the bed and twice, against her will, put his penis inside her vagina. The victim testified that in between the rapes, appellant had "oral

sex" with her. When he left, the police were called and the victim was taken to the hospital where an examination disclosed an abrasion on the side of her throat and sperm in her vagina.

## I.  MOTION FOR MISTRIAL

During closing arguments, the prosecutor told the jury of their responsibility to fix punishment and reviewed the range for each offense. He then told the jury that they were to set punishment for a specific term of years. The prosecutor reviewed the events to which the victim had been subjected but did not suggest a term that should be imposed. The transcript discloses the following argument and discourse:

> When you look at punishment you have to consider is he a dangerous man? Yes. Should he be locked up where he cannot get at other people in our society, a man that has already been convicted, I think he said of breaking and entering, attempted robbery, of larceny—
>
> MR. GOODMAN: Your Honor, I object to that. That instruction is very clear on that.
>
> THE COURT: Yes, I've instructed the jury. You can't consider that in fixing penalty, only in assessing his credibility as a witness. That's the law of the Commonwealth.
>
> MR. DEATON: It does go to his credibility as a witness, all of his convictions.

The prosecutor's further argument relating to prior convictions was limited to appellant's credibility. Appellant made no motion for mistrial until three months after the jury verdicts had been announced.[1]

---

[1] The following argument was made in a footnote in the Commonwealth's brief: The defendant objected to the prosecutor's comment at trial, yet made no motion for a mistrial based upon the comment until his motion to set aside the verdict, some three months after his trial. (App. 169-173). A motion for a mistrial based upon a prosecutor's alleged improper comments is untimely and properly refused when it is made after the jury has retired. *Cheng v. Commonwealth*, 240 Va. 26, 38-39, 393 S.E.2d 599, 605-606 (1990). Thus, although the trial court chose to rule on the motion and deny a mistrial (App. 174-175) the motion was untimely.

Here, the motion was made after the jury had retired and returned its verdicts. Although we do not disagree with the Commonwealth's footnote, we address the issue on the merits because the trial judge did so.

██ The trial court clearly instructed the jury, orally and in writing, that they could consider appellant's criminal record only as it affected appellant's credibility. "Once a jury is instructed regarding the use or limitations placed upon specific evidence, they are presumed to follow such instructions." *Lewis v. Commonwealth*, 8 Va. App. 574, 580, 383 S.E.2d 736, 740 (1989). *See also Lewis v. Commonwealth*, 211 Va. 80, 84, 175 S.E.2d 236, 239 (1970). We find no reason to conclude that the jury failed to obey the trial court's specific instruction. Accordingly, the trial court did not err in denying appellant's motion for mistrial.

## II. *INSTRUCTION NOT TO DISCUSS*

Appellant asserts that it was reversible error for the trial court to decline to instruct the jury that they were not to discuss the case prior to hearing the final arguments. He cites as authority for his position a form instruction contained in Volume I of the *Virginia Model Jury Instructions — Criminal*. The instruction requested is a single paragraph lifted from a full two-page instruction and consists of two and one-half lines out of an instruction consisting of approximately eighty lines. It provides:

> There will be occasional recesses during the trial. During these recesses you must not discuss the case with anyone, including your fellow jurors. . . .

The entire instruction was designed to be given at the outset of the trial and intended to be an explanation of how the trial proceeds and the roles played by the various participants. Appellant made no request for the instruction at the beginning of trial or when the jury retired for lunch or at any other time until all the evidence had been presented. At the lunch break, the trial court told the jury that they should not discuss the matter and the reason for its admonishment was that "every juror is entitled to hear any expression, opinion or observation made by any other juror." While this instruction is not on "all fours" with the quote above, it stresses the important reason for withholding discussion, to-wit: each juror should have the benefit of hearing from all the other jurors before reaching a decision.

We find nothing in the record to indicate that the jury discussed this case in any improper manner or that the judgment of the trial court was plainly wrong when it declined to select a portion of the

suggested opening remarks to the jury and read it separately after the introduction of evidence had been completed.

### III. SUFFICIENCY OF THE EVIDENCE TO PROVE SODOMY

■ To sustain a conviction for sodomy, the Commonwealth must prove beyond a reasonable doubt that penetration occurred. *Hudson v. Commonwealth*, 141 Va. 525, 527, 127 S.E. 89, 89 (1925); *Chrisman v. Commonwealth*, 3 Va. App. 371, 377, 349 S.E.2d 899, 903 (1986). However, penetration may be proved by circumstantial evidence, *Ryan v. Commonwealth*, 219 Va. 439, 445, 247 S.E.2d 698, 702 (1978), and that evidence need only be slight. *Rowland v. Commonwealth*, 147 Va. 636, 639, 136 S.E. 564, 565 (1927).

After describing the condition under which she discovered appellant's presence in her bedroom and saying after "he was done and then he turned the light back off," the following questions were proffered and responses made:

Q: Unfortunately we have to go—explain a little bit more about what it was that he did, if you can tell us about that.

A: On two (2) separate occasions during the evening, because he was there for sometime, he had sex with me and on one occasion he had oral sex with me.

Q: And when you say he had sex with you, do you mean his penis inside your vagina?

A: Yes.

Q: This is a legal question I need to ask. Was this against your will?

A: Yes.

Citing *Ryan*, the Commonwealth argues that, considering the entire record, with the victim's statement that when she said appellant had sex with her she meant that he placed his penis inside her vagina, the jury could reasonably have inferred that appellant's tongue had penetrated her vagina. *Ryan* held that penetration may be proved by circumstantial evidence and affirmed a conviction where the record disclosed: "Ryan then attempted numerous

times without success to have sexual intercourse with Mrs. V.. Upon finding himself physically incapable of accomplishing this purpose, he rubbed his penis around her vaginal area, fondled her breasts and 'took his tongue and . . . started down around the vagina with his tongue,' licking her vagina. The episode lasted approximately forty-five minutes." *Ryan*, 219 Va. at 444, 247 S.E.2d at 700-01. Under those facts, the Court held that a jury reasonably could infer *from the evidence* that penetration occurred. We do not agree that *Ryan* controls here. In this case, no evidence established that appellant's lips or tongue made contact with the victim's vagina and no evidence was offered which equated oral sex to the meaning of sex as she defined it. Thus, we hold that the essential element of penetration was not proved beyond a reasonable doubt. *See Ashby v. Commonwealth*, 208 Va. 443, 444, 158 S.E.2d 657, 658 (1968)(where the Court held that the evidence failed to prove penetration when it was limited to proof that the mouth was put on the penis).

For the reasons stated, we affirm the convictions for rape and breaking and entering a dwelling with intent to rape, and reverse the conviction for sodomy and dismiss that charge.

*Affirmed in part,*
*reversed and dismissed in part.*

Benton, J., concurred.

Elder, J., dissenting.

I concur with the majority in affirming the convictions for rape and breaking and entering a dwelling with intent to rape. I respectfully dissent from the majority opinion dismissing the conviction for sodomy. I would affirm.

On May 4, 1989, between 1:30 and 1:45 a.m., the victim was asleep in her apartment in Charlottesville when she was awakened by appellant kissing her on her cheek as he "straddled" her body. When she screamed, appellant grabbed her throat, placed a "sharp, cold object" against it, and warned her to be quiet. Appellant then proceeded to remove victim's clothing. When she protested, appellant told her to shut up or he would shove his knife down her throat. On at least two occasions, he put his hands on her throat as if he were going to choke her.

The victim testified that appellant put his penis inside her vagina on two occasions and had "oral sex" with her between the rapes. The testimony indicates that appellant had the lights on and his jacket over the victim's head during the first act of intercourse and during the "oral sex" act. During the second act of intercourse, the lights were off and the victim was directed to sit on the appellant. Appellant left between 4:30 and 4:45 a.m. after having been in the victim's bedroom for approximately three hours. The police were called and a medical examination of the victim disclosed sperm in her vagina and an abrasion on the side of her neck.

The majority correctly states that to sustain a conviction for sodomy, the Commonwealth must prove beyond a reasonable doubt that penetration occurred. *Chrisman v. Commonwealth*, 3 Va. App. 371, 377, 349 S.E.2d 899, 903 (1986). Whether penetration occurred is a question for the jury. It may be proved by circumstantial evidence and that evidence need only be slight. *Ryan v. Commonwealth*, 219 Va. 439, 445, 247 S.E.2d 698, 702 (1978). In *Ryan*, the only sex act occurring was sodomy after the attacker was unable to perform sexual intercourse. In *Ryan*, the incident lasted forty-five minutes with the appellant licking the victim's vagina and fondling her breasts. No direct testimony was presented that penetration occurred. In the case before us, the entire attack lasted three hours. Two acts of sexual intercourse and one act of "oral sex" was proved based on the victim's testimony as follows:

A. Yes, at one time he had me laid back on the bed and he put the jacket over my head and he had my clothes off and he turned on the light and he just kept it over my head until he was done and then he turned the light back off and took the jacket off my head again.

Q. Unfortunately we have to go — explain a little bit more about what it was that he did, if you can tell us about that.

A. On two (2) separate occasions during the evening, because he was there for sometime, he had sex with me and on one occasion he had oral sex with me.

Q. And when you say he had sex with you, do you mean his penis inside your vagina?

A. Yes.

The victim's head was covered by appellant's jacket when the "oral sex" occurred. The victim's testimony indicates that when she said "sex," she meant penetration of her vagina by appellant's penis. Two acts of sexual intercourse occurred and the entire episode lasted for three hours. *Ryan* holds that "[e]vidence of the condition, position, and proximity of the parties . . . may afford sufficient evidence of penetration to support a charge of sodomy by cunnilingus." *Id.* (citations omitted). It is well understood that inferences to be drawn from proven facts are solely within the province of the trier of fact. *Stockton v. Commonwealth*, 227 Va. 124, 145, 314 S.E.2d 371, 385, *cert. denied*, 469 U.S. 873 (1984).

The jury was instructed in this case that in order to prove forcible sodomy, the Commonwealth had to prove beyond a reasonable doubt, *inter alia*, that the appellant "penetrated the outer lips of the female sexual organ . . . with his mouth or tongue." The jury was further instructed that they could use "common sense in judging any testimony." Based upon these facts and the use of "common sense," the jury could have reasonably inferred that the appellant was guilty as charged.

Case law in this state and others is replete with decisions where words such as "sex," "rape," "intercourse," "sexual intercourse" and "sexual relations" have been found sufficient, in the context of the case to prove penetration. *See generally* Annotation, *Rape — What Constitutes Penetration in Prosecution for Rape or Statutory Rape*, 76 A.L.R.3d 163 (1977). In *King v. Commonwealth*, 165 Va. 843, 183 S.E. 187 (1936), our Supreme Court made some observations that are just as pertinent today as they were fifty-five years ago. The facts in *King* established that the victim was grabbed by the throat, dragged between two houses, thrown to the ground, choked and according to the victim, "raped." When asked if the defendant had "intercourse" with her, the victim answered in the affirmative. No other evidence regarding penetration was presented. Under those facts, the Supreme Court affirmed the conviction, saying:

> [I]t does not require the assistance of a logician or lexicographer to lead the jury to infer that when the prosecutrix said she was raped that she meant anything other than that the defendant had committed an act of sexual intercourse with

her. . . . [i]t would strain our credulity to reach the conclusion that she meant anything else than "sexual connection."

*Id.* at 847-48, 183 S.E. at 189.

Likewise, under the facts of the case before us, the jury reasonably could have inferred that "oral sex" meant that the appellant "penetrated the outer lips of the female sexual organ . . . with his mouth or tongue."

For the foregoing reasons, I would affirm the conviction for forcible sodomy.