COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Fitzpatrick and Annunziata
Argued at Salem, Virginia


BILLY FISHER

                                   MEMORANDUM OPINION[*] BY
v.      Record No. 2454-96-3      JUDGE JOHANNA L. FITZPATRICK
                                        JULY 15, 1997
COMMONWEALTH OF VIRGINIA

          FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                   Diane McQ. Strickland, Judge

          John H. Kennett, Jr., for appellant.

          John H. McLees, Jr., Assistant Attorney
          General (James S. Gilmore, III, Attorney
          General, on brief), for appellee.


     On June 25, 1996, Billy Fisher (appellant) was convicted in

a jury trial of possession of cocaine with intent to distribute.

 On appeal, he contends that the trial court erred in:

(1) admitting a handgun into evidence; (2) failing to instruct

the jury during the guilt or innocence phase of the trial about

the potential range of punishment for the offense charged; and

(3) finding the evidence sufficient to convict.  For the

following reasons, we affirm the judgment of the trial court.

                              I.

     During the early morning hours of July 30, 1995, Officer

Edward Murphy (Murphy) of the Salem Police Department was working

undercover for the Virginia Alcoholic Beverage Control Division.

 He drove to the Black Angus Club in the City of Roanoke, pulled

_____
          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

into the parking lot, and parked his car. He noticed that appellant, who was driving a truck, followed him into the parking lot and parked beside the building. There were no passengers in the truck. Murphy watched as appellant got out of the truck, placed two orange traffic cones to the right side of the truck, and ran an extension cord from the building to the truck. Appellant then walked around the parking lot. He approached Murphy, who was sitting in his car, and told him that he either had to depart or go into the club. Murphy testified that at this point, appellant's demeanor was "calm and casual and sociable."

Soon thereafter, Detective R.E. Chandler (Chandler) and other officers of the Vice Bureau of the Roanoke City Police Department arrived at the club and conducted a search of the truck. Chandler described the truck as "an old refrigerator truck . . . that appeared to be converted into a camper type or fishing vehicle, [which] had a lot of fishing equipment in it." During the search of the vehicle, appellant was "in and out" of the club, and Murphy observed a change in appellant's demeanor. He noticed that appellant became "real nervous like talkative, agi--agitated . . . he seemed to be more talkative. There was a lot of hyperactivity, just a lot of rambling, you know, nervousness." Appellant was not present during the entire search or when the contraband was found.

In the cab of the truck, the police found a "fanny pack" under the front driver's seat where appellant had been seated.

2

They also discovered appellant's ID and a loaded "small derringer-type gun" in the fanny pack. Because the back of the truck could not be entered from the cab, the police forced the back door open. Inside they located a port-o-john, a shelf or counter with appliances on it, and a bench seat that had a bed or couch cushion on top of it. Under the cushion was a hole in the platform, and hidden inside the hole was a blue nylon bag. In one of the side pouches of the bag, they seized a black camera and a blue neckerchief that was wrapped around three small baggies containing cocaine. Nearby were digital scales and several plastic baggies. Among the personal items contained in the back of the truck were fishing equipment, tackle boxes, gas cans, clothing, sheets, and cooking appliances. The truck and the personal property were seized by the police. Later, when appellant arrived at the police station to retrieve his personal effects, he claimed the camera but did not claim the blue bag.

At trial, the police videotape of the truck's contents was shown to the jury. Additionally, the jury was shown a photograph of appellant's personal property, which included the camera. Other evidence at trial established that two of the baggies recovered from inside the blue bag contained a total of 10.48 grams of powder cocaine. The third baggie contained a mixture of cocaine and inositol. Expert testimony established that inositol is a common cutting agent for street cocaine.

Additional expert testimony addressed the value and the

significance of the amount of cocaine recovered from the truck. The testimony indicated that this quantity of cocaine was inconsistent with personal use,[1] that the other paraphernalia (including the scales, the cutting agent, and the baggies) found in the truck were tools of the drug distribution trade, and that "a gun is rarely found on a user. It is more ---- it's usually found on someone that's dealing and used to protect their profits."

Monica Patterson testified on behalf of appellant. She agreed that the blue bag belonged to her and that she had used it to carry her swimming gear. However, she stated that she had not seen the bag since her relationship with appellant ended approximately two years earlier. Theodore Alford, Jr. also testified for appellant. He stated that he frequently went fishing with appellant and that they used the scales in the back of the truck to weigh the fish that they caught.

During the trial, the court sua sponte issued a cautionary instruction to the jury regarding the significance of the handgun. The court stated as follows:

> I would like to give you a cautionary instruction. One (1) of the exhibits that was admitted into evidence is a handgun. And in connection with that exhibit, I would like to instruct you as follows, the fact that a person owns a handgun found in his vehicle is not evidence that the drugs found in his

---

[1] Detective C.L. McCoy testified that the typical quantity of cocaine for personal use was "about [.25] grams which is a small amount of powder" and that 10.5 grams of cocaine would provide approximately "forty, forty-two single dose units."

4

vehicle also belonged to him.

II.

Appellant first contends that the only purpose for introducing the gun found in the truck into evidence was to prejudice the jury. Additionally, he argues that the Commonwealth's hypothesis that drug dealers use guns, and that the gun tended to prove that appellant possessed the cocaine with intent to distribute, was rejected by this Court in Burchette v. Commonwealth, 15 Va. App. 432, 425 S.E.2d 81 (1992).

"Evidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." Ragland v. Commonwealth, 16 Va. App. 913, 918, 434 S.E.2d 675, 678 (1993).

> Upon finding that certain evidence is relevant, the trial court is then required to employ a balancing test to determine whether the prejudicial effect of the evidence sought to be admitted is greater than its probative value. This responsibility is a matter submitted to the sound discretion of the trial court, and will not be disturbed on appeal absent a clear abuse of discretion.

Wise v. Commonwealth, 6 Va. App. 178, 188, 367 S.E.2d 197, 203 (1988). "The relationship between the distribution of controlled substances . . . and the possession and use of dangerous weapons is now well recognized." Logan v. Commonwealth, 19 Va. App. 437, 445, 452 S.E.2d 364, 369 (1994) (en banc).

In the instant case, the Commonwealth bore the burden of proving that appellant had the intent to distribute the cocaine found in his truck. Accordingly, the fact that he carried a

6

handgun in the truck had legitimate probative value regarding the element of his intent.  The trial court did not abuse its discretion in admitting this evidence as relevant to an element of the crime charged.

Additionally, appellant's reliance on Burchette is misplaced.  Burchette rejects the use of such evidence to prove that the armed person was in knowing possession of the drugs. Burchette, 15 Va. App. at 437, 425 S.E.2d at 83-84.  The evidence was not introduced for such a purpose in the instant case. Rather, the gun was introduced as evidence of appellant's intent to distribute the drugs.  The trial court expressly instructed the jury that they could not consider appellant's possession of the handgun as knowing possession of cocaine.  "'Once a jury is instructed regarding the use or limitations placed on specific evidence, they are presumed to follow such instructions.'" Lawson v. Commonwealth, 13 Va. App. 109, 112, 409 S.E.2d 466, 467 (1991) (quoting Lewis v. Commonwealth, 8 Va. App. 574, 580, 383 S.E.2d 736, 740 (1989) (en banc)).  Nothing in the record indicates that the jury failed to adhere to the instruction regarding its consideration of the gun.  Thus, appellant's argument is without merit.

### III.

Appellant next argues that the trial court erred in failing to inform the jury at the guilt stage of the trial of the possible range of punishment for the offense.  Appellant failed

to raise this argument at trial, and he is procedurally barred from raising it on appeal. The Court of Appeals will not consider an argument on appeal that was not presented to the trial court. Jacques v. Commonwealth, 12 Va. App. 591, 593, 405 S.E.2d 630, 631 (1991) (citing Rule 5A:18).

IV.

Lastly, appellant contends that the evidence presented was insufficient to convict him of possession of cocaine with intent to distribute. Specifically, he argues that the Commonwealth failed to prove that, as the owner or occupant of the vehicle in question, he exercised such dominion and control that he would necessarily have known of the presence, nature, and character of the drugs recovered from his vehicle.

"A conviction will be affirmed unless it appears from the evidence that it is plainly wrong." Jetter v. Commonwealth, 17 Va. App. 745, 746, 440 S.E.2d 633, 633 (1994). "On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom," Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987), and "the burden is on appellant to show that the evidence failed to support the trial court's decision." Jetter, 17 Va. App. at 747, 440 S.E.2d at 634.

To establish the offense of possession of cocaine with intent to distribute, the Commonwealth must prove that appellant "'intentionally and consciously possessed' the drug, either

8

actually or constructively, with knowledge of its nature and character, together with the intent to distribute it." <u>Wilkins v. Commonwealth</u>, 18 Va. App. 293, 298, 443 S.E.2d 440, 444 (1994) (<u>en</u> <u>banc</u>) (citing <u>Josephs v. Commonwealth</u>, 10 Va. App. 87, 99-102, 390 S.E.2d 491, 497-99 (1990) (<u>en</u> <u>banc</u>); Code § 18.2-248)). Ownership and occupancy of a vehicle alone are insufficient to prove knowing possession of drugs found in the vehicle; however,

> [o]wnership or occupancy of a vehicle or of premises where illicit drugs are found is a circumstance that may be considered together with other evidence tending to prove that the owner or occupant constructively possessed the contraband . . . .

<u>Burchette</u>, 15 Va. App. at 435, 425 S.E.2d at 83.

Viewing the evidence in the light most favorable to the Commonwealth as the prevailing party, it is clear that appellant was the sole owner and occupant of the vehicle. Appellant testified that he used the vehicle as a fishing truck, but he obviously also used it for other purposes. He was not fishing at the time of the truck's seizure. The fact that he might at one time have used the scales in the truck to weigh fish does not preclude their use as a weighing device for the cocaine discovered nearby. The evidence further established that the back of the truck, where the drugs were recovered, was replete with items of appellant's personal property. The cocaine was recovered from the same pocket in appellant's bag in which his camera was found. The digital scales, the plastic baggies, the

9

quantity and value of the cocaine, and the loaded handgun support the inference that appellant possessed this cocaine with intent to distribute. Appellant's ownership and control of the vehicle and the proximity of the drugs and paraphernalia to appellant's personal property, in addition to the other facts, demonstrate that appellant constructively possessed the cocaine with the intent to distribute.

Appellant argues that the holding in Burchette requires reversal of the case at bar. We disagree. In Burchette, we held that where the Commonwealth "presented no evidence from which one reasonably could infer that [appellant] occupied the vehicle or had exercised dominion over it while the [contraband] was present in it" and where the Commonwealth "failed to show either when [appellant] may have used or occupied the vehicle or when or for how long the drugs or paraphernalia had been in it," then the evidence did not tend to prove constructive possession. Burchette, 15 Va. App. at 435-36, 425 S.E.2d at 84. We held that under such circumstances, the "probability of guilt is insufficient to warrant a criminal conviction." Id. at 438, 425 S.E.2d at 86.

Unlike Burchette, the facts of the instant case demonstrate that the Commonwealth proved not only that appellant owned the truck where the drugs were found, but also that appellant himself had driven the truck to the Black Angus Club parking lot, and that he had exercised dominion and control over the truck during

10

the time it stayed in the lot.  No evidence was presented to indicate that anyone other than appellant had control of the truck.  Sole occupancy and dominion and control over the vehicle at the time in which the drugs are found therein is additional evidence of knowing possession.  See, e.g., Jetter, 17 Va. App. 745, 440 S.E.2d 633.  Thus, viewing the evidence in its entirety, all necessary circumstances proved were consistent with guilt and inconsistent with innocence, and every reasonable hypothesis of innocence was excluded.  See Garland v. Commonwealth, 225 Va. 182, 184, 300 S.E.2d 783, 784 (1983).

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.