COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Fitzpatrick, Judges Coleman and Lemons
Argued at Salem, Virginia

KENNETH EDWARD BROWN

v. Record No. 0695-98-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE SAM W. COLEMAN III
JUNE 15, 1999

FROM THE CIRCUIT COURT OF HENRY COUNTY
Charles M. Stone, Judge

James R. McGarry (Young, Haskins, Mann, Gregory & Smith, P.C., on brief), for appellant.

Eugene Murphy, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Kenneth Edward Brown was convicted by a jury of aggravated malicious wounding and robbery. On appeal, Brown contends that the trial court erred by denying his motions (1) for a new trial on the ground that the Commonwealth violated the court's discovery order by withholding from him the fact that a Commonwealth's witness had a felony conviction, (2) for a mistrial because the Commonwealth introduced inadmissible evidence that he used

*Pursuant to Code § 17.1-413, recodifying Code § 17-116.010, this opinion is not designated for publication.

cocaine, and (3) to strike the evidence as insufficient to support the robbery conviction. Finding no error, we affirm the convictions.

## BACKGROUND

Grogan’s Grocery is a country store located in Henry County owned and operated by Arnie Grogan. During the early morning before the store opened, Brown knocked on the front door under the pretense of needing to purchase kerosene. Grogan opened the store for Brown and as Grogan turned around, Brown struck him on the head until he became unconscious.

Grogan’s billfold, which had been in the cash register before Brown entered the store, contained approximately $1,000 in $100 bills. After Grogan regained consciousness, the billfold was missing.

At trial, Grogan positively identified Brown as his assailant. On cross-examination, Grogan admitted that he was not wearing glasses on the morning of the attack, that he only saw the assailant for a “short time,” and that he had difficulty identifying Brown as his assailant in a previous identification. Nevertheless, he testified that he was “sure” about the identification.

The Commonwealth also proved that Brown’s vehicle was at Grogan’s Grocery on the morning when the crime occurred. Jason Dodd testified that on the morning of the robbery he saw a vehicle

in the middle of the road near Grogan’s store. In the vehicle was a man whom Dodd identified as Brown. Additionally, Dodd identified pictures of Brown’s car as the vehicle he saw that morning.[1]

John Wilson, who also drove by Grogan’s store that morning, testified that he saw a car parked there that had no license plates, which he later identified from the pictures as Brown’s car. Wilson pointed out that he recognized the rust spot on the fender. After trial, but before sentencing, the Commonwealth informed Brown that Wilson had been convicted in 1983 of involuntary manslaughter, a felony.

The evidence further proved that on April 26, Jerry Morgan, Brown’s landlord, had notified Brown that he and his family were to vacate their residence on May 26 for nonpayment of rent. Grogan’s store was robbed on the morning of May 25. Between 7:00 and 7:30 on the morning of May 25, Morgan drove by Brown’s residence and noticed that his car was not there. Morgan testified that before the robbery, Brown had no money.

---

[1]Brown asserts that his counsel impeached Dodd’s testimony. On cross-examination, Dodd confirmed that after the robbery he told investigators he remembered a hole in the car’s gas tank like the hole in the defendant’s car. Assuming that Dodd was referring to a hole in the gas cap cover, counsel for Brown asked Dodd if he had a view of that side of the vehicle on the morning of the robbery. Dodd admitted that he had no view of that side of the vehicle, but clarified that he was referring to the rusted-out hole in the vehicle’s fender rather than the hole in the gas cap.

However, Renee Martin testified that on May 26 at 1:30 p.m., Brown and his wife rented a trailer from her and for a security deposit and one-week's rent Brown's wife paid $350 with three $100 bills and one fifty dollar bill. Then, on June 8, she paid $250 in rent with two $100 bills and other denominations.

Jesse Norris, a convicted felon who was in jail with the defendant after the robbery, testified that Brown admitted to him that he committed the robbery. Brown told Norris that he hit Grogan with a tire iron, took his wallet, and left the store. Brown also said that as he turned his car around, several people drove past him. He noted that he had removed the tags from the vehicle to avoid identification and had thrown the tire iron into the water. Brown had asked Norris whether stains and fingerprints could be taken from a tire iron that had been under water. Brown also asked Norris whether he knew how to remove a distinctive rust spot from a vehicle.

During rebuttal, Brown's wife testified that "things weren't going very well" regarding their marriage. On cross-examination the Commonwealth asked her whether she ever had "any problem with what [Brown] did with the money that he did have." When she responded that she did not, the Commonwealth asked whether she recalled making a statement to Renee Martin regarding her concerns about how her husband spent money. When she replied that she did not recall, the Commonwealth asked: "Did you tell her [Brown] was spending the money on cocaine?" Over Brown's objection, and

pursuant to the trial court's ruling, the Commonwealth re-phrased the question: "Did you ever tell Renee Martin that your husband, Kenny, was spending money, family money, on cocaine?" Brown's wife did not deny the statement but could not recall having ever made it. The trial court cautioned the jury not to consider the statement as evidence of drug use but only with regard to its impact, if any, on the witness' credibility. The Commonwealth did not thereafter introduce evidence from Renee Martin that Brown's wife had stated that Brown was spending family money on cocaine.

## ANALYSIS

### Failure to Disclose Exculpatory Evidence

"[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). "[A] person convicted of a felony . . . shall not be incompetent to testify, but the fact of conviction may be shown in evidence to affect his credit." Able v. Commonwealth, 16 Va. App. 542, 546, 431 S.E.2d 337, 339 (1993) (quoting Code § 19.2-269). "Favorable evidence is material 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998) (quoting

United States v. Bagley, 473 U.S. 667, 682 (1985)). Therefore, Brown "must show that when the case is evaluated in the context of the entire record, including the omitted evidence, a jury would have entertained a reasonable doubt" as to Brown's guilt. Id.

The Commonwealth violated the court's discovery order by failing to reveal Wilson's prior convictions. Had the Commonwealth revealed Wilson's conviction for involuntary manslaughter, Brown could have impeached Wilson's credibility with that information. However, we find that there is no reasonable probability that had the conviction been disclosed, the jury would have come to a different conclusion. Therefore, the trial court did not err in denying the motion for a new trial.

Wilson's testimony that he saw Brown's car at Grogan's store on the morning of the robbery was circumstantial evidence which corroborated the other overwhelming evidence of Brown's guilt. Moreover, the testimony was cumulative of Dodd's testimony who also identified Brown's vehicle. Furthermore, Wilson's identification of Brown's car was much less incriminating than Grogan's and Dodd's testimony identifying Brown. Additional testimony made the evidence of guilt overwhelming: Norris testified that Brown confessed to him; Moore testified that prior to the robbery Brown had no money; and Martin testified that after the robbery Brown's wife had a large sum of cash in $100 bills, the same denomination taken with Grogan's billfold. Thus, absent Wilson's testimony, we find the Commonwealth's evidence of Brown's

guilt to be overwhelming on both charges. Accordingly, we find that the trial court did not err in denying Brown's motion for a new trial.

Prior Inconsistent Statement

"On appeal[,] the denial of a motion for a mistrial will not be overruled unless there exists a manifest probability that the denial of a mistrial was prejudicial." Harward v. Commonwealth, 5 Va. App. 468, 478, 364 S.E.2d 511, 516 (1988). "If a witness gives testimony that is inconsistent with a prior statement, or testifies that he does not recall making the prior statement, a sufficient foundation for impeachment has been laid, and opposing counsel may cross-examine the witness as to the inconsistency." Smith v. Commonwealth, 15 Va. App. 507, 511, 425 S.E.2d 95, 98 (1992).

Evidence establishing that the Browns were in pressing need of money was relevant to prove that Kenneth Edward Brown had a motive to commit the crimes. The Commonwealth introduced evidence showing that the Browns lacked sufficient financial resources to pay their rent prior to the robbery. The defendant offered his wife's testimony in rebuttal to prove that despite some financial difficulty, they had sufficient income prior to the robbery. In her rebuttal testimony, Paula Brown accounted for the money that the Browns spent immediately after the robbery and testified that

the money was under her control prior to and during the time when the Commonwealth alleged defendant obtained the money by robbing Grogan's store.

In cross-examining Paula Brown, the Commonwealth asked her whether she had problems with the way her husband spent money. In response, she testified that she had no complaints regarding how her husband spent their money. The Commonwealth then attempted to impeach her by asking, "Did you ever tell Renee Martin that your husband, Kenny, was spending . . . family money, on cocaine?"

By asking this question, the Commonwealth sought to elicit testimony tending to impeach Paula Brown in two ways. First, the Commonwealth sought to refute the substance of her prior testimony by having her acknowledge that her husband was financially irresponsible and had depleted family resources. Second, the Commonwealth sought to impeach her credibility as a witness by proving that she had made a prior statement inconsistent with her testimony under oath.

The Commonwealth's question called for information relevant to establish the lack of funds as a motive to commit the crimes. However, in order for the trial court to determine whether the question was proper, the trial court had to weigh the probative value of the evidence against its prejudicial impact. See Cumbee v. Commonwealth, 219 Va. 1132, 1137-38, 254 S.E.2d 112, 116 (1979).

Clearly, the question had a prejudicial effect in that it implied that Brown used cocaine. Here, the trial court had no opportunity to weigh the probative value against the prejudicial effect because the Commonwealth had asked the question in the jury's presence. The trial court, apparently assuming that Paula Brown would admit having made the statement, admonished the jury only to consider the fact that she may have made the statement to the extent that it impeached her testimony and credibility. The judge instructed the jury not to consider her statement as evidence of Brown's drug use and in doing so, the judge limited the question's prejudicial effect. A jury is presumed to follow a judge's instruction regarding the limitation placed on a specific piece of evidence, see Lawson v. Commonwealth, 13 Va. App. 109, 112, 409 S.E.2d 466, 467 (1991), and nothing in the record rebuts the presumption that the jury followed the judge's admonition. Additionally, Paula Brown did not acknowledge having made the prior statement; she replied instead, that she did not recall having made the statement. Although the question called for a potentially prejudicial response, the response was not prejudicial, and the Commonwealth never introduced the allegedly prior inconsistent statement. Thus, assuming without deciding that the question was more prejudicial than probative and should have been disallowed, the trial judge's procedure for handling the question was nevertheless harmless. Because the evidence of guilt was overwhelming, and the trial court instructed the jury to

disregard any prejudicial impact from the question, we conclude that the jury was not affected by the question. Therefore, we cannot say that there is a manifest probability that the denial of appellant's motion for a mistrial was prejudicial.

Sufficiency

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

As noted, we find the Commonwealth's evidence was overwhelming, thus, it was sufficient to convict Brown of malicious wounding and robbery. Grogan identified Brown as the assailant, and two other witnesses placed Brown's vehicle at the crime scene. Grogan testified that when he regained consciousness, his wallet containing approximately ten $100 bills was missing. The evidence showed that Brown was experiencing financial difficulty, that the crime occurred the day before he and his family had to vacate their leased residence for non-payment of rent, and that on the afternoon after the robbery the Browns entered into a new lease paying the security deposit and one-week's rent in $100 bills. While in jail, Brown admitted to Norris that he struck Grogan with a tire iron and stole Grogan's billfold.

At trial, Brown denied guilt and produced evidence to impeach the credibility of Grogan, Wilson,[2] Dodd, and Norris. However, "[t]he weight which should be given to evidence and whether the testimony of a witness is credible are questions which the fact finder must decide." Bridgeman v. Commonwealth, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). The evidence is not inherently incredible and is sufficient to support the convictions.

In conclusion, we find that the Commonwealth's failure to disclose Wilson's conviction record was not material to the jury's conviction, that the trial court did not err by allowing the Commonwealth to question Paula Brown regarding her prior inconsistent statement, and that the evidence was sufficient to support the convictions. Accordingly we affirm the convictions.

Affirmed.

---

[2]On appeal, Brown asserts that Wilson's evidence was unimpeached. However, on cross-examination, he admitted that he did not see the car for very long, that he was really only concerned with the missing tags, that he did not pay attention to the make or model of the car, that he did not remember whether the car had a roof rack, and that the allegedly identifying rust was not an uncommon feature of cars in the area.