COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Felton, Judges Elder and Beales
Argued by teleconference


WILLIAM JOSEPH DAVIS

MEMORANDUM OPINION[*] BY

v.       Record No. 0908-05-2            JUDGE LARRY G. ELDER
                                         JULY 5, 2006

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge

Denis C. Englisby (Mark E. Englisby; Englisby, Englisby, Vaughn &
Englisby, on brief), for appellant.

Leah A. Darron, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Office of the Attorney General, on brief), for
appellee.


William Joseph Davis (appellant) appeals from his bench trial conviction for animate

object sexual penetration in violation of Code § 18.2-67.2.[1]  On appeal, he contends the evidence

was insufficient to prove the element of penetration necessary to support his conviction.

Viewing the evidence in the light most favorable to the Commonwealth, we agree.  Accordingly,

we reverse appellant's conviction and dismiss the indictment.

I.

BACKGROUND

Appellant admitted that on the evening of February 19, 2004, while he was twenty-one

years old, he, the fifteen-year-old victim, L.W., and others drank alcohol for several hours on

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also was convicted for two counts of contributing to the delinquency of a
minor in violation of Code § 18.2-371.  He does not challenge those convictions in this appeal.

L.W.'s front porch. Appellant and L.W. went into the nearby woods, where the two engaged in some sort of sexual encounter. At some point in the encounter, L.W. fell, and appellant called out for help. Friends who came to appellant's assistance found L.W. was "staggering around, like she was intoxicated"; she had no clothes on from the waist down; and "she was talking crazy, like something about a baby." When one of appellant's friends asked appellant what had happened, appellant responded that "he didn't . . . have sex with her." The group put L.W.'s underclothes, pants and shoes back on her and took her home.

When L.W. arrived home, L.W.'s mother observed that her bra was "up around her neck," her underpants were on backwards, one of her shoes was off, her belt "wasn't all the way through her pants," and blood was on her shirt. L.W. "couldn't respond" to her mother's questions, smelled of alcohol, and appeared drunk. L.W.'s mother called 911, and L.W. was taken to the emergency room. Hospital staff was unable to examine the victim for evidence of sexual assault because she became combative. At trial, the victim admitted she did not recall leaving her front porch with appellant and could not say whether the two engaged in any sexual contact.

Detective Keith Applewhite investigated the events of February 19, 2004. He interviewed appellant about those events over the telephone and tape recorded that conversation. Appellant initially reported that L.W. offered to have sex with him but that "he didn't do anything with her." Detective Applewhite then told appellant about "how evidence can be left behind and you do not know that the evidence was there" and that such evidence may be collected with a PERK kit. He also told appellant that a PERK kit had been used to collect evidence from L.W. Detective Applewhite then revisited the issue of whether appellant had placed his hands on L.W., and appellant "stated that he had fingered her." Detective Applewhite said appellant's statement meant "[t]o [him]" that "[appellant] actually placed" or "inserted his

fingers" "inside of [L.W.'s] vagina." Detective Applewhite confirmed that appellant never "specifically" "said that he put his fingers in [L.W.'s] vagina" or that "he penetrated her."

Appellant testified in his own defense. He said that as he left L.W.'s porch to go home, L.W. followed him and offered to have sex with him but that he declined her offer. He claimed that, while they were in the woods, L.W. "pulled her pants down a little bit and put [his] hands on her vagina." He said he left his hand there for five or ten seconds. He admitted telling Detective Applewhite on the tape that he fingered L.W., but he claimed he "[didn't] know another word of touching her vagina" and "didn't know it would . . . automatically mean putting my hands inside of her." He later claimed he put his hand "on top of her vagina[,] . . . that's her pubic hair, basically," and denied, upon detailed cross-examination, feeling the lips of her vagina or her clitoris.

In closing, appellant's counsel argued, *inter alia*, that the evidence failed to prove penetration.

The trial court ruled as follows:

> [T]he evidence is in considerable part circumstantial. The Court has listened very carefully to each of the witnesses and, particularly, very carefully to the defendant himself. I find that the evidence is consistent with guilt and inconsistent with innocence. I particularly find the testimony of the defendant to be wholly and completely incredible, and I am persuaded that the Commonwealth has borne its burden, and the elements of each of the remaining offenses have been proven beyond a reasonable doubt.

II.

ANALYSIS

Code § 18.2-67.2 provides in relevant part as follows:

> A. An accused shall be guilty of inanimate or animate object sexual penetration if he or she penetrates the labia majora . . . of a complaining witness, . . . other than for a bona fide medical purpose, . . . and

&#42;    &#42;    &#42;    &#42;    &#42;    &#42;    &#42;

> 2. The act is accomplished . . . through the use of the
> complaining witness's mental incapacity or physical helplessness.

Appellant contends the evidence was insufficient to prove the penetration necessary to support his conviction. We agree.

When considering the sufficiency of the evidence on appeal of a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to that evidence all reasonable inferences deducible therefrom. See, e.g., Welch v. Commonwealth, 271 Va. 558, 561, 628 S.E.2d 340, 341 (2006). The fact finder is not required to believe all aspects of a witness' testimony; it may accept some parts as believable and reject other parts as implausible. Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993). In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt. Speight v. Commonwealth, 4 Va. App. 83, 88, 354 S.E.2d 95, 98 (1987) (*en banc*). However, the fact that an accused has lied merely provides the trier of fact with a basis for rejecting the accused's testimony; it does not provide substantive evidence of guilt. See Tarpley v. Commonwealth, 261 Va. 251, 256-57, 542 S.E.2d 761, 764 (2001).

"'Penetration may be proved by circumstantial evidence and is not dependent on direct testimony from the victim that penetration occurred.'" Jett v. Commonwealth, 29 Va. App. 190, 194, 510 S.E.2d 747, 748 (1999) (*en banc*) (quoting Morrison v. Commonwealth, 10 Va. App. 300, 301, 391 S.E.2d 612, 612 (1990)). "For the purpose of Code § 18.2-67.2, as well as the statutes prohibiting rape and forcible sodomy, penetration 'need be only slight.'" Id. at 194, 510 S.E.2d at 749 (quoting Horton v. Commonwealth, 255 Va. 606, 612, 499 S.E.2d 258, 261 (1998)). The Supreme Court has held that

- 4 -

> "Penetration of any portion of the vulva, which encompasses the external parts of the female sexual organs considered as a whole and includes, beginning with the outermost parts, the labia majora, labia minora, hymen, vaginal opening and vagina[,] . . . is sufficient to establish the element of penetration."

Moore v. Commonwealth, 254 Va. 184, 190, 491 S.E.2d 739, 742 (1997) (quoting Love v. Commonwealth, 18 Va. App. 84, 88, 441 S.E.2d 709, 712 (1994)). "'Penetration of the vaginal opening . . . clearly [is] not required.'" Jett, 29 Va. App. at 195, 510 S.E.2d at 749 (quoting Love, 18 Va. App. at 88, 441 S.E.2d at 712).

Nevertheless, in order to sustain a conviction for object sexual penetration, whether penetration occurred may not be left to conjecture. See, e.g., Welch, 271 Va. at 564, 628 S.E.2d at 343-44. In Welch, for example, the Supreme Court reversed a conviction for carnal knowledge of a minor, an offense that also required proof of penetration. Id. at 563-64, 628 S.E.2d at 343. In Welch, the victim testified she and the defendant engaged in a "sexual relationship," but the victim was not asked to detail the precise physical contact this "sexual relationship" included. Id. at 564, 628 S.E.2d at 343. The Court held this evidence was insufficient to prove penetration beyond a reasonable doubt because "[t]here may be a wide range of acts that could be fairly understood by a 14-year-old as sexual in nature, but some of those acts would not be prohibited under the carnal knowledge statute." Id. at 565, 628 S.E.2d at 344.

Similarly, in Lawson v. Commonwealth, 13 Va. App. 109, 113-14, 409 S.E.2d 466, 468-69 (1991), we reversed a conviction for oral sodomy based on a lack of evidence to prove penetration. In Lawson, the victim testified that the defendant "had sex with [her]" against her will on two occasions and "oral sex with [her]" on one occasion. Id. at 113, 409 S.E.2d at 468. Upon further questioning, she defined "sex" to mean the defendant put "his penis inside [her] vagina," but she did not define what she meant by oral sex. Id. at 113-14, 409 S.E.2d at 468.

Because "no evidence established that appellant's lips or tongue made contact with the victim's vagina [or any other portion of the vulva] and no evidence was offered which equated oral sex with the meaning of sex as [the victim had] defined it," we "[held] that the essential element of penetration was not proved beyond a reasonable doubt." Id. at 114, 409 S.E.2d at 468.

In appellant's case, the only evidence of penetration was appellant's admission to the investigating officer, Detective Applewhite, that he "finger[ed]" the victim. Detective Applewhite did not ask appellant what he meant by this term, and appellant never "specifically" "said that he put his fingers in [L.W.'s] vagina" or that "he penetrated her." Further, at trial, appellant testified that he placed his hand merely "*on*" L.W.'s vagina, which he defined as "her pubic hair, basically," and that he did not, in fact, penetrate her with his finger. He testified that "fingering" was the only term he knew for "touching [someone's] vagina" or "pubic hair" and that he "didn't know it would . . . automatically mean putting my hands inside of her."

Although the trial court was entitled to reject this portion of appellant's testimony as not credible, nevertheless, the remaining evidence was insufficient to prove beyond a reasonable doubt that digital penetration occurred. Detective Applewhite testified that appellant's use of the word, "finger[ing]," meant, "*[t]o [Detective Applewhite]*," that "[appellant] actually placed" or "inserted his fingers" "inside of [L.W.'s] vagina." (Emphasis added). However, Detective Applewhite did not testify why he believed the term had such a meaning or that this definition was commonly accepted "street" slang for "digital penetration" among members of appellant's generation. Further, the common dictionary definition of the verb, "finger"--meaning "to touch or feel with the fingers," Webster's Third New International Dictionary 853 (1981)--merely begs the question, for it does not resolve precisely what part of the victim's anatomy appellant "touch[ed]" or "fe[lt]" "with [his] fingers." In the absence of additional evidence about what

fingering meant in this context, "[w]e are left to speculate about what actually occurred" between

appellant and L.W.  See Welch, 271 Va. at 564, 628 S.E.2d at 343.

Thus, we hold the evidence, viewed in the light most favorable to the Commonwealth,

was insufficient to prove the penetration necessary to support appellant's conviction for animate

object sexual penetration.

III.

For these reasons, we hold the evidence was insufficient to support appellant's

conviction.  Accordingly, we reverse the challenged conviction and dismiss the indictment.

Reversed and dismissed.