**Richmond**

BERNE NELSON LOVE

v.

COMMONWEALTH OF VIRGINIA

No. 1396-92-2

Decided March 22, 1994

■■■■■■■

■■■■■■■

COUNSEL

Craig S. Cooley, for appellant.

Marla Lynn Graff, Assistant Attorney General (Stephen D. Rosenthal, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—Berne Nelson Love appeals from his convictions for the rape, attempted sodomy, forcible sodomy, and aggravated sexual battery of his step-granddaughter. On appeal, he argues that the trial court erred (1) in denying his motion to strike the Commonwealth's evidence on the sodomy charge; (2) in instructing the jury that proof of penetration on the sodomy charge required proof of penetration only of the outer lips of the vagina and not the vagina itself; and (3) in concluding that the evidence was sufficient to support all of his convictions. For the reasons that follow, we affirm appellant's convictions.

I.

The prosecutrix, a thirteen-year-old child, testified at trial to multiple instances during which appellant forced her to engage in several different forms of sexual contact. Beginning when she was five years old, appellant "would take [her into] the bathroom and make [her] shake his privates." Although appellant forced her to engage in this behavior "a lot of times," she was afraid to tell anyone about it. The child also testified that a "couple of times" when she was between the ages of six and twelve, appellant removed her pants, "rubb[ed] his privates down where [her] privates were," and put his penis in her vagina. She screamed and asked him to stop because it hurt, but he refused to do so. Once, after engaging in vaginal intercourse, appellant put his penis around the child's "chest area and . . . face." He tried to put his penis in her mouth, but she held it closed tightly so that he could not. Appellant later told her that if she "ever told anybody he

would rape [her] 'til [she] die[d]." On another occasion, when the child was nine or ten, appellant licked her "down where [her] private part was," such that his tongue went "[o]n top of [her] crack and kind of inside of [her] crack." She also testified that his tongue touched her "hole" but that she knew it did not go inside "[b]ecause [she] did not feel it go in."

The child's stepmother testified that when the child was seven, the child's sister told her the child had seen appellant's penis. When the stepmother asked the child about it, the child reported that it had happened in the bathroom. When the stepmother confronted appellant and asked him how he could do such a thing, he said, "I don't know why I did it." The stepmother testified that she ordered appellant to move out of their house, which he did, but that, despite her efforts to keep him away from the children, he was later found alone in the house with the children without permission.

When the child was twelve, she finally reported the incidents to her father's female friend. The father's friend testified that she suspected something was wrong because the child appeared to be afraid of appellant. Upon questioning, the child specifically told her of appellant's licking of her private parts and attempts to put his penis in her mouth. The child also told the story to Detective Auditore, who interviewed her in 1991. On cross-examination, the child admitted that she had received regular physicals during these years, and that she had not reported the incidents to anyone until the father's friend asked whether "anybody [had] sexually messed with [her]." She also admitted that several people, including the prosecutor and social worker, had assisted her in preparing her testimony by reminding her of things she had forgotten.

Detective Auditore testified about his interrogation of appellant. Although appellant initially denied having any sexual contact with the child, he later admitted several different incidents. During 1986, he said, while he was drying his hair with a towel that covered his face, the child sneaked into the bathroom and began to play with his penis. Although he told her to get out, the child's sister saw the incident and reported it to her mother, who accused him of molesting the child. He related another incident during which he said the child put her hand up the leg of his shorts and began to fondle him. Finally, he admitted to Auditore that "he sometimes allow[ed] the child to play with his penis," but denied

that he ever engaged in intercourse or cunnilingus with the child. A social worker present during Auditore's interview of appellant corroborated much of Auditore's testimony. Appellant subsequently called Auditore and said all the child's stories were lies.

On direct examination at trial, appellant admitted only to the incident in which the child had sneaked into the bathroom and fondled his penis. On cross-examination, he admitted telling Auditore about an incident in which the child had put her hand up the leg of his shorts. He denied ever telling Auditore that he allowed the child to masturbate him in the bathroom.

Appellant moved to strike the Commonwealth's evidence at the conclusion of the Commonwealth's case-in-chief and at the close of all the evidence. The trial judge ultimately denied both motions. Appellant also objected to jury instruction 7, which stated that the penetration required for the sodomy conviction was established if the Commonwealth had proven "[t]hat the tongue of the defendant penetrated into the outer lips of the [victim's] female sexual organ." His proffered instruction was refused.

## II.

The parties agree that penetration is required for a conviction of sodomy by cunnilingus. *See Ryan v. Commonwealth*, 219 Va. 439, 444-45, 247 S.E.2d 698, 702 (1978) (comparing the penetration requirement in case involving alleged sodomy by fellatio to a case of sodomy by cunnilingus). Their dispute is over what must be penetrated. On appeal, we must view the evidence in the light most favorable to the Commonwealth. *Traverso v. Commonwealth*, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988). The evidence adduced at trial established that appellant's tongue penetrated at least the victim's outer vaginal lips, or labia majora, and touched but did not penetrate the vaginal opening itself.

Appellant offered the following jury instruction, which the trial court refused: "To be sodomy, there must be penetration, no matter how slight, of the tongue into the vaginal opening of another. Mere touching of the tongue to the vaginal opening is not sufficient. It is not necessary that there be an ejaculation." However, the trial court accepted the Commonwealth's proffered instruction, which stated that penetration was required but that it was established if the evidence showed beyond a reasonable doubt

"[t]hat [petitioner's] tongue . . . penetrated into the outer lips of the [victim's] female sexual organ."

Implicit in both the majority and dissenting opinions in *Lawson v. Commonwealth*, 13 Va. App. 109, 409 S.E.2d 466 (1991), is that appellant *could* properly be convicted of sodomy if the evidence proved beyond a reasonable doubt that he "penetrated the outer lips of the female sexual organ . . . with his mouth or tongue." *Id.* at 116, 409 S.E.2d at 470 (Elder, J., dissenting); *see id.* at 113-14, 409 S.E.2d at 468. The Virginia Supreme Court accepted a substantially similar definition of penetration in *Rowland v. Commonwealth*, 147 Va. 636, 136 S.E. 564 (1927). In that case, the examining doctor testified that, although the nine-year-old victim's hymen was intact, "there might have been penetration of the vulva, or outer portion of the organ, without injury to the hymen." *Id.* at 638, 136 S.E. at 565. On that testimony, the Court concluded that the evidence of penetration was sufficient to sustain the defendant's conviction for rape. *Id.* at 639, 136 S.E. at 565. Implicit in *Rowland* is that penetration of any portion of the vulva, which encompasses the "external parts of the female sex organs considered as a whole" and includes, beginning with the outermost parts, the labia majora, labia minora, hymen, vaginal opening and vagina, 4 J.E. Schmidt, *Attorneys' Dictionary of Medicine* V-106 (18th ed. 1990), is sufficient to show penetration. Penetration of the vaginal opening, which the testimony in *Rowland* showed could not have taken place based on the condition of the victim's hymen, clearly was not required. The case law from other jurisdictions "uniformly" holds that insertion of the defendant's tongue into the victim's vagina need not be shown to prove cunnilingus. *Commonwealth v. Benoit*, 531 N.E.2d 262, 266 n.6 (Mass. App. Ct. 1988), *review denied*, 536 N.E.2d 612 (Mass. 1989); *see State v. Kish*, 443 A.2d 1274, 1278-79 (Conn. 1982); *Partain v. State*, 492 A.2d 669, 672 (Md. Ct. Spec. App.), *cert. denied*, 498 A.2d 1185 (Md. 1985); *State v. Thompson*, 574 S.W.2d 432, 433-34 (Mo. Ct. App. 1977); *State v. Brown*, 405 N.W.2d 600, 606-07 (Neb. 1987); *State v. Fraction*, 503 A.2d 336, 337-38 (N.J. Super. Ct. App. Div. 1985), *cert. denied*, 517 A.2d 426 (N.J. 1986); *State v. Ludlum*, 281 S.E.2d 159, 161-63 (N.C. 1981).

Appellant argues that the legislature's use of the phrase, "penetrates the labia majora," in Code §§ 18.2-67.2 and 18.2-67.2:1

but not in the section at issue here, § 18.2-67.1, shows that the legislature intended to require more than penetration of the labia majora to support a sodomy conviction. This difference in language is not dispositive, however, for the references to penetration of the labia majora in §§ 18.2-67.2 and 18.2-67.2:1 proscribe inanimate object sexual penetration, a statutory offense which required express definition. By contrast, the legislature has used the term cunnilingus, a common law crime which is not defined in the code, to describe oral sodomy committed against a female. Contrary to appellant's assertions, we find more logical the conclusion that the legislature intended to mandate the same degree of penetration for all of these offenses. The jury was properly instructed that penetration of the labia majora was sufficient to support the sodomy conviction.

### III.

Appellant also argues that the evidence in this case was insufficient to support any of his convictions. He bases his argument on the assertion that the prosecutrix's testimony was incredible as a matter of law because she waited seven years to report the incidents; forgot certain details of her prior reports and testimony; and appeared to have been coached by the detective, prosecutor and social worker. In addition, appellant argues that her testimony was uncorroborated by any physical evidence. Finally, appellant vehemently denied the charges, and six witnesses testified to his good character. Other than those arguments raised above, however, he does not allege that the evidence was lacking as to any other elements of the offenses.

Appellant's arguments clearly fail. "When considering the sufficiency of the evidence on appeal of a criminal conviction, we must view all the evidence in the light most favorable to the Commonwealth and accord to the evidence all reasonable inferences fairly deducible therefrom." *Traverso*, 6 Va. App. at 176, 366 S.E.2d at 721. Unless the jury's verdict is "plainly wrong or without evidence to support it," it will not be disturbed on appeal. *Id.* In addition, it is up to the jury to determine the credibility of the witnesses, by "weighing such factors as the appearance and manner of the witness on the stand, their intelligence, their opportunity for knowing the truth and observing the things about which they testify, their interest in the outcome of the case, their bias, and if any had been shown, their prior inconsistent statements."

*Mullis v. Commonwealth*, 3 Va. App. 564, 571, 351 S.E.2d 919, 923 (1987) (citing *Zirkle v. Commonwealth*, 189 Va. 862, 870, 55 S.E.2d 24, 29 (1949)).

The jury obviously found the prosecutrix's testimony credible and appellant's testimony, which was riddled with unexplained inconsistencies, incredible. None of the factors emphasized by appellant renders the child's testimony either inadmissible or incredible as a matter of law. For example, it was up to the jury to determine what effect, if any, the delay in reporting the incident had on the credibility of the child's testimony. *See, e.g., Corvin v. Commonwealth*, 13 Va. App. 296, 299, 411 S.E.2d 235, 237 (1991). Under settled principles of law, the child's testimony alone, if believed by the jury, was sufficient to support appellant's conviction, even in the absence of corroborating physical or testimonial evidence. *Id.*; *see Fisher v. Commonwealth*, 228 Va. 296, 299, 321 S.E.2d 202, 203-04 (1984).

For these reasons, we affirm the judgment of the trial court.

*Affirmed.*

Benton, J., and Koontz, J., concurred.