COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Retired Judge Kulp[*]
Argued at Richmond, Virginia


DANIEL WADE INGE

MEMORANDUM OPINION[**] BY
v.    Record No. 1628-98-2          JUDGE JAMES W. BENTON, JR.
                                         JUNE 20, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
William R. Shelton, Judge

David B. Hargett (Joseph D. Morrissey;
Morrissey & Hershner, PLC, on brief), for
appellant.

Linwood T. Wells, Jr., Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellee.


A jury convicted Daniel Wade Inge of rape.  See Code
§ 18.2-61(A).  He contends the evidence was insufficient to
support the conviction.  We disagree and affirm the conviction.

The complaining witness testified that she went to a hotel
room at night with her friend Christa Rosenberg to watch a fight
on television.  When they arrived, Inge, who was Rosenberg's
boyfriend, and Jason Matthews were in the room.  The complaining

---

[*] Retired Judge James E. Kulp took part in the consideration
of this case by designation pursuant to Code § 17.1-400,
recodifying Code § 17-116.01.

[**] Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

witness, who was eighteen years old, drank one or two bottles of beer that she brought to the room.  She also drank "a pretty good amount" of whiskey, estimating "probably six or seven" cups of whiskey in two and a half hours.  All four of them were drinking alcoholic beverages.

During the evening, the complaining witness became ill from alcohol consumption and vomited.  While the complaining witness was lying on the bed and vomiting, Rosenberg said that she had to leave because her mother paged her.  The complaining witness testified that she asked Rosenberg to stay and that she did not remember when Rosenberg left.  After someone instructed her to remove her shirt because she had vomited on it, she could not remember anything else until she woke and realized that Inge "had [her] hand on his penis."  After she pulled her hand away, Inge "tried to get [her] to get on top of him."  She testified that she was unable to do so because she "couldn't move."  Inge then turned her onto her stomach and began having sexual intercourse with her.  She testified that she did not physically resist because she was unable to move and "didn't know what to do."  She testified, however, that she told him:  "I don't want to get pregnant"; "I didn't want to do it" and "I wanted to go home."  She also testified that she was "in and out [of consciousness]" and did not know what was happening to her.  She recalled that Matthews "was on the bed beside [them] passed out."

-

After the sexual intercourse ceased, she got off the bed and fell, hitting her head on a bureau. She then attempted to make a phone call, but Inge took the phone and instructed her to give him the number that she wished to call. Inge dialed a number and reported to her that no one answered. When she again attempted to use the phone, Inge unplugged it. After she dressed, Inge drove her home.

When she arrived home, she called her boyfriend and her sister. Her sister arrived at her house and called the police. The nurse who examined the complaining witness that night at the hospital testified that she had no bruising or scratches on her outward body. The nurse did find, however, that the complaining witness had some "light reddened abrasions on both labia majora." She testified those were consistent with the complaining witness' account but also consistent with some acts of consensual intercourse.

Rosenberg testified that when she left to go home, the complaining witness was still fully awake and conscious and "waved good bye" to her. She testified that the complaining witness had vomited but was able to engage in conversation. The day after these events, Inge told her it was Matthews who had sexual intercourse with the complaining witness.

Matthews testified that during that evening the complaining witness "laid on top of [him] . . . and fondled [him]." When the complaining witness vomited, he removed her shirt because it was

-

soiled and rinsed it.  He testified that, aside from being sick, she was coherent.  He also testified that he declined an offer of oral sex from the complaining witness.  He testified that he went to sleep on the bed, later woke, and saw the complaining witness "on top of [Inge]" having sexual intercourse.  Matthews said he "was pretty much out of it . . . and went right back to sleep."

A detective testified that when he interviewed Inge, Inge denied having "sex" with the complaining witness and said Matthews "had sex with [her]."  Later, after having been given Miranda warnings, Inge said he, Matthews, and the complaining witness engaged in a drinking contest, which caused her to get sick.  Inge said he had "consensual sex" with the complaining witness after Matthews went to sleep.  Inge recounted that she rolled over, mounted him, and engaged in intercourse.  He said Matthews woke up and smiled as this was occurring.  Inge said he then "rolled her over onto her stomach" and continued to have sexual intercourse.  Inge also told the detective that Matthews "had said he would . . . cover for [Inge] if [Rosenberg] had ever found out that they . . . had had consensual sex."

In Inge's defense, a man testified that when he was dating the complaining witness she flirted with Inge.  Rosenberg also testified again and said the complaining witness offered to perform oral sex on Matthews if he took "a triple shot" of whiskey.  She also testified that the complaining witness later "crawled up in [Matthews'] lap."

-

Inge testified that the complaining witness asked him to have sexual intercourse with her. Inge testified that he did not force the complaining witness to have sexual intercourse with him, did not threaten her, and did not intimidate her in any way. He also testified that during the sexual intercourse, she was able to move and, contrary to her testimony, was on top of him. Inge testified that she never said "stop" or "no" during the sexual intercourse. He further testified that Matthews had agreed to tell Rosenberg that Matthews had "had sex with [the complaining witness]."

On this evidence, the jury convicted Inge of rape.

## II.

In pertinent part, Code § 18.2-61 provides as follows:

> A. If any person has sexual intercourse with a complaining witness who is not his or her spouse or causes a complaining witness, whether or not his or her spouse, to engage in sexual intercourse with any other person and such act is accomplished (i) against the complaining witness's will, by force, threat or intimidation of or against the complaining witness or another person, or (ii) through the use of the complaining witness's mental incapacity or physical helplessness, or (iii) with a child under age thirteen as the victim, he or she shall be guilty of rape.

When, as in this case, the evidence contains conflicting testimony, "the jury . . . [must] determine the credibility of the witnesses, by 'weighing such factors as the appearance and manner of the witness on the stand, their intelligence, their opportunity for knowing the truth and observing the things about

-

which they testify, their interest in the outcome of the case, their bias, and if any had been shown, their prior inconsistent statements.'" Love v. Commonwealth, 18 Va. App. 84, 89-90, 441 S.E.2d 709, 713 (1994) (citation omitted). Therefore, when an issue is raised on appeal concerning the sufficiency of the evidence, we review the evidence in the light most favorable to the Commonwealth, granting to that evidence all reasonable inferences fairly deducible therefrom. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Viewed in the light of these principles, the evidence was sufficient for the jury to find beyond a reasonable doubt that the complaining witness' version of the events was credible. Although the record contains extensive conflicting evidence, the jury decided those factual questions adversely to Inge. Indeed, the complaining witness' testimony alone, if believed by the jury, was sufficient to support the conviction. See Snyder v. Commonwealth, 220 Va. 792, 796, 263 S.E.2d 55, 57 (1980); Love, 18 Va. App. at 90, 441 S.E.2d at 713.

The evidence as presented by the complaining witness established that, when she was inebriated and unable to move, Inge tried to put her on top of him, then turned her onto her stomach, and had sexual intercourse with her. From this evidence, the jury could find beyond a reasonable doubt the element of force necessary to support the conviction.

-

> To determine whether the element of force has been proved in the crimes of non-statutory rape and sodomy by force, the inquiry is whether the act or acts were effected with or without the victim's consent. The issue is: Was the victim willing or unwilling? In that connection, there must be evidence of "some array or show of force in form sufficient to overcome resistance, but the woman is not required to resist to the utmost of her physical strength, if she reasonably believes resistance would be useless and result in serious bodily injury to her." And the amount of resistance which may be required necessarily depends on the circumstances of each case, taking into consideration the relative physical condition of the participants and the degree of force manifested. Indeed, this court has said that "no positive resistance" by the victim need be demonstrated if it appears that the crime was effected without her consent.

Jones v. Commonwealth, 219 Va. 983, 986, 252 S.E.2d 370, 372 (1979).

Inge testified that he engaged in sexual intercourse with the complaining witness but contends that it was consensual. The complaining witness testified, however, that when these events were occurring, she "said I didn't want to . . . [,] said I didn't want to get pregnant . . . [, and] said I wanted to go home." That evidence, believed by the jury, was sufficient to prove beyond a reasonable doubt that the sexual intercourse was committed against her will and without her consent.

-

Accordingly, we hold that the evidence was sufficient to prove the elements of rape, and we affirm the conviction.

<u>Affirmed</u>.