COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judge O'Brien and Senior Judge Humphreys


JAMES H. GIBSON, III

                                                    MEMORANDUM OPINION*
v.        Record No. 0665-24-2                      PER CURIAM
                                                    MAY 13, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF BUCKINGHAM COUNTY
Donald C. Blessing, Judge

(Aaron M. Vandenbrook; Reinhardt Vandenbrook, PLLC, on brief),
for appellant.

(Jason S. Miyares, Attorney General; Justin M. Brewster, Assistant
Attorney General, on brief), for appellee.


Following a bench trial, James H. Gibson, III (appellant) was convicted of carnal knowledge

and incest and sentenced to 20 years' incarceration with 15 years suspended. On appeal, appellant

challenges the sufficiency of the evidence to sustain his convictions, arguing that the victim's

testimony was inherently incredible and he had an alibi defense. After examining the briefs and

record, the panel unanimously holds that oral argument is unnecessary because "the appeal is

wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the convictions.

BACKGROUND

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth,"

the prevailing party at trial. *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc)

(quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to

"discard the evidence of the accused in conflict with that of the Commonwealth[] and regard as true

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

In 2021, appellant's fourteen-year-old daughter, M.H., was living with her grandmother, Jacqueline Shifflett. M.H. had never lived with appellant and, before August 2021, did not "see him often." Around that time, Shifflett allowed appellant to have increased visitation with M.H. In September 2021, appellant petitioned for custody of M.H.

On the evening of Saturday, October 2, 2021, M.H. visited a haunted house attraction with her friend, Kiera, and several family members. During the evening, appellant called M.H. and "asked if he could come and see" her. M.H. told him that she was at the haunted house, and he responded that he would come after she got back.

The group returned to Shifflett's residence after midnight, and Kiera spent the night there. In the early morning hours, appellant called M.H. and told her that he was on his way and she should come outside to meet him. M.H. told Kiera that she was going to see appellant and "snuck out of [her] window and walked down the road to the stop sign." Kiera stayed in M.H.'s room.

When M.H. arrived at the stop sign, appellant "was waiting in a vehicle to pick [her] up." M.H. sat in the front passenger seat and saw two of her younger half-sisters asleep in the back seat. Appellant told her not to wake them.

Appellant drove approximately ten minutes to a "public pull-off" and stopped as far off the road and down the hill as possible. He used a blanket to cover the windshield and asked M.H. to exit the vehicle and sit on the hood with him. Once she did, he "started rubbing [her] leg and tr[ied] to open [her] pants." In an effort to stop him, M.H. told appellant that "the kids were in the car," but appellant responded that "that was the reason he put the blanket over the windshield." Appellant

pulled M.H's pants and underwear down to her ankles and lowered his pants to "just below his butt."

Appellant penetrated M.H.'s vagina with his penis, and although M.H. repeatedly told him "no" and "stop," he continued until he ejaculated. He then withdrew his penis and told her to pull her pants up and get in the car. Appellant folded the blanket and put it in the back seat. He got behind the wheel, lit a cigarette, and asked if M.H. "was ready to go home now." She said "yes," and he drove her back to the stop sign.

M.H. walked back to Shifflett's residence and knocked on her bedroom window so Kiera could open it. Using her cell phone camera, Kiera took a picture of M.H. climbing back through the window at 5:29 a.m. M.H. showered repeatedly. Although M.H. did not tell Kiera what had happened, Kiera knew that "something was off about her." Appellant subsequently tried to contact M.H., but she did not reply and blocked his phone number. In November 2021, M.H. told her boyfriend about the sexual assault. She also reported the incident to a school counselor at that time; the counselor contacted the sheriff's department.

Appellant was charged with rape by threat, force, or intimidation, carnal knowledge, and incest. At trial, M.H. offered conflicting testimony concerning the precise date of the crime but reiterated that it happened early on a Sunday morning, after returning from the haunted house attraction.

On cross-examination, M.H. testified that she did not recall which vehicle appellant was driving when he picked her up. She knew appellant had a white Hyundai sedan with a black interior but stated that, at times, he had also picked her up in "small four-door green car" that belonged to a former girlfriend.

M.H.'s half-sister, A.G., who was 13 years old at the time of trial in December 2023, also testified. A.G. recalled the "[o]ne time" that appellant drove her and her half-sister to see M.H.[1] A.G. fell asleep in the car; when she awoke, M.H. was also in the car. She remembered appellant and M.H. getting out of the car, but she fell back asleep until appellant brought her home. A.G. told her mother, Jessica Gibson, that appellant "went and picked [M.H.] up and that it was late." Jessica Gibson testified that appellant had visitation with A.G. on October 2, 2021, and when A.G. came home on October 3, 2021, "she was upset" because she did not have "a lot of sleep because she was out."

Dorothy Martin testified as an alibi witness for appellant. She stated that she was living with appellant in October 2021 and he was with her for the entire day and night of October 2, 2021. She also testified that on October 2, appellant's white sedan was "on blocks" in her garage for maintenance. She identified a picture that, according to her, showed the car "on blocks."

In his closing argument, appellant asserted that he had adduced "uncontroverted evidence" that he was not with M.H. on October 2 or 3, 2021. Further, he conceded that, although the Commonwealth's evidence showed that "something happened to" M.H., the evidence did not establish that he "did anything to her."

The court viewed "the evidence collectively" and found M.H. to be "in most degrees credible." The court dismissed the rape count because the Commonwealth failed to prove beyond a reasonable doubt that appellant accomplished sexual intercourse by force, threat, or intimidation, but it convicted appellant of carnal knowledge under Code § 18.2-63 and incest under Code § 18.2-366.

---

[1] A.G. lived with her mother but had visitation with appellant. A.G. did not specifically testify about when the incident occurred.

- 4 -

ANALYSIS

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "An appellate court reviews a lower court's findings of fact 'with the highest degree of appellate deference.'" *Commonwealth v. Wilkerson*, ___Va. ___, ___ (Feb. 20, 2025) (quoting *Commonwealth v. Barney*, 302 Va. 84, 96 (2023)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *McGowan*, 72 Va. App. at 521 (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Appellant contends that the evidence was insufficient to support his convictions because M.H.'s testimony was inherently incredible. He also argues that he established an alibi through Martin's testimony.

I. Inherent Incredibility

"[D]etermining the credibility of witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify." *Maldonado v. Commonwealth*, 70 Va. App. 554, 562 (2019) (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "The power to segregate a witness's testimony into the believable, partly believable, or wholly unbelievable is an exercise of decisional discretion intrinsic to the factfinding task and essential to its proper performance." *James v. Commonwealth*, 53 Va. App. 671, 679 n.2 (2009) (quoting *Harper v. Commonwealth*, 49 Va. App. 517, 523 (2007)).

"Thus, this Court must accept 'the trial court's determination of the credibility of witness testimony unless, "as a matter of law, the testimony is inherently incredible."'" *Canada v. Commonwealth*, 75 Va. App. 367, 386 (2022) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)).

We reject appellant's assertion that M.H.'s testimony was inherently incredible. Appellant argues that M.H.'s testimony was replete with inconsistencies and contradictions. Any such inconsistencies or contradictions were proper fodder for cross-examination and closing argument. Appellant's attempt to impeach M.H.'s credibility "does not necessarily render [her] testimony unworthy of belief." *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006). Rather, "[t]his circumstance [of her inconsistent statements] is appropriately weighed as part of the entire issue of witness credibility, which is left to the [fact finder] to determine." *Id.*; *see Ray v. Commonwealth*, 74 Va. App. 291, 306 (2022) ("[T]he mere fact that a witness'[s] testimony may have been impeached does not necessarily render the testimony inherently incredible."). Determining the credibility of witness testimony is a "matter[] solely for the fact finder[,] who has the opportunity to see and hear that evidence as it is presented." *Hammer v. Commonwealth*, 74 Va. App. 225, 239 (2022) (second alteration in original) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 486 (2018)).

Appellant's contention that M.H.'s testimony is incredible because it is uncorroborated also fails. Convictions for sexual offenses "may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). Moreover, although no one else personally observed the sexual intercourse, several witnesses—including Kiera, Jessica Gibson, and A.G.—corroborated other details from M.H.'s account of the night in question. Such corroboration is particularly significant here, considering appellant's reliance on an alibi defense that challenged M.H.'s account in its entirety.

Further, any delay in reporting the incident does not render M.H. inherently incredible. "Virginia courts have consistently found that delayed reporting does not render a sexual assault victim per se unworthy of belief." *Grimaldo v. Commonwealth*, 82 Va. App. 304, 323 (2024). Rather, the fact that M.H. first reported appellant's conduct more than a month after it occurred was merely one factor to be considered by the trier of fact in weighing her testimony. *See Love v. Commonwealth*, 18 Va. App. 84, 90 (1990) (stating that "it was up to the [fact finder] to determine what effect, if any, the delay in reporting had on the credibility of the child's testimony").

II. Alibi Defense

We also reject appellant's assertion that Martin's testimony established an alibi defense, requiring the trial court to acquit him.[2] M.H. testified that appellant picked her up, drove her to a secluded location, and engaged in sexual intercourse with her early on a Sunday morning in October. The testimony of several other witnesses corroborated M.H.'s account. Martin averred that appellant was at home with her on the day in question. Thus, appellant's assertion that Martin's testimony was "unimpeached" is incorrect. Rather, the contradiction between M.H.'s and Martin's testimony presented a material factual conflict for the trial court to resolve. The court, having heard all the testimony and seen all the evidence, credited M.H.'s account. There is no basis for this Court to disturb that determination.

---

[2] Appellant argues that he was "not required by law to establish an alibi beyond a reasonable doubt, nor even by a preponderance of the evidence, . . . but merely sufficiently to leave in the mind of a fact-finder a *reasonable doubt* that he had committed the offense charged." But the case that appellant cites for this proposition addressed whether and how to instruct a jury regarding a defendant's alibi defense. *See Draper v. Commonwealth*, 132 Va. 648, 663 (1922). A jury instruction does not dictate our standard of review: rather than assess whether an alibi defense raised a reasonable doubt, we consider only whether the fact finder was plainly wrong in rejecting the defense. *See Vasquez*, 291 Va. at 248. Here, the trial court as fact finder considered and rejected appellant's alibi defense, crediting the victim's testimony instead. Because the fact finder was responsible for weighing the evidence, and these determinations are not plainly wrong, we will not disturb them on appeal. *See McGowan*, 72 Va. App. at 521.

## CONCLUSION

For these reasons, we affirm the trial court's judgment.

*Affirmed.*