COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Ortiz, Raphael and Senior Judge Annunziata
Argued at Fairfax, Virginia


BERNARDO OROZCO

MEMORANDUM OPINION* BY
v.        Record No. 0205-24-4                JUDGE DANIEL E. ORTIZ
AUGUST 5, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

Kathryn C. Donoghue, Senior Assistant Public Defender, for
appellant.

Ken J. Baldassari, Assistant Attorney General (Jason S. Miyares,
Attorney General; Lauren C. Campbell, Assistant Attorney General
on brief), for appellee.


Appealing his sodomy by anal intercourse conviction, Bernardo Orozco contends that the

complaining witness, S.C., was inherently incredible, and, even accepting his testimony, that

there was insufficient evidence of anal penetration to support his conviction.  We disagree.

S.C.'s testimony did not rise to the level of being inherently incredible.  Nor was S.C.'s

testimony insufficient for a reasonable factfinder to find Orozco guilty of sodomy by anal

intercourse.  S.C. distinguished between Orozco putting his penis "in," "into," or "on" S.C.'s

"butt," and he clarified that his butt was where he went "number two."  Finding no error, we thus

affirm the trial court's judgment.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Until his fifth year in school, S.C. and his family lived in a townhouse next door to Orozco.[2] Orozco was a "very close" family friend, who regularly socialized with S.C.'s father. Growing up, S.C. even referred to Orozco as "Tio Nando," meaning "Uncle Nando."[3] S.C., who was fourteen years old at trial, testified to ongoing sexual abuse from Orozco from the time S.C. was in kindergarten until the summer before fifth grade.

S.C. first recalled an incident when he was in kindergarten. While Orozco was outside cleaning his vehicle, he "grabbed [S.C.] and then put [S.C.] in his car." Orozco "started unbuckling his pants, and then started putting his penis in [S.C.'s] mouth." S.C. raised his hand in an attempt "to get it out" but could not. Outside, S.C.'s mother called his name. Orozco stopped, put his pants back on, and let S.C. out of the car.[4] S.C.'s mother testified that she recalled calling for S.C. after seeing him leave Orozco's truck. When S.C. went inside the home, his mother asked him what had happened several times; S.C. told her that Orozco touched "his parts." S.C.'s mother confronted Orozco, but Orozco denied touching S.C. and claimed he was lying. S.C.'s mother told Orozco she would call the police if anything else happened.

_____

[1] We recite the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, we discard any evidence that conflicts with the Commonwealth's, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

[2] To protect his privacy, we refer to S.C., the minor victim, by his initials.

[3] S.C.'s family spoke Spanish; S.C. spoke both English and Spanish.

[4] On cross-examination, Orozco introduced into evidence a recording in which S.C. previously described this incident as Orozco touching S.C. over S.C.'s clothes with no mention of forced fellatio; when confronted at trial, S.C. testified that both events occurred. The Commonwealth stipulated to the jury that S.C. had not informed investigators about that incident of forced fellatio.

- 2 -

Then, in the summer before S.C. started first grade, he was playing alone outside his family home when Orozco approached and asked if S.C. wanted food. After S.C. said yes, Orozco brought S.C. into his house and upstairs into a bedroom. S.C. testified that Orozco "tried to put his penis in my butt but he couldn't so then he just let me go." Orozco told S.C. that he could not penetrate S.C. because he "was too little." S.C. testified that Orozco "had [his penis] on my butt, but he didn't do nothing else after that." S.C. confirmed that Orozco's penis was "touching" his butt.

S.C. also testified to a series of sexual assaults Orozco committed while S.C. was in the fourth grade. Once, after S.C. crossed the street in front of Orozco, Orozco parked his car near where S.C. was walking. Orozco "grabbed" S.C.'s hand and "pushed" S.C. into the front passenger seat of his truck. Orozco took his pants off, "grabbed [S.C.'s] head," and "put his penis in [S.C.'s] mouth."

Another time, S.C. left his home to retrieve something from the family's car, which was parked next to Orozco's truck. It was dark outside, and the area was unlit. Orozco was outside disposing of trash. When S.C. exited the back of the car, Orozco "pulled [S.C.] aside," and asked, "Do you remember when you were little?" S.C. responded, "Remember what?" Without answering, Orozco pulled down his shorts and "pushed [S.C.] down on his knees" behind Orozco's truck. Orozco then put "his penis in [S.C.'s] mouth." S.C. testified that his brother and a child neighbor were playing on the sidewalk near the neighbor's house during Orozco's assault.

On another occasion, S.C. was outside with a friend after dark. They were both "scared to go down the alley" by themselves because of nearby gang activity. S.C.'s friend saw Orozco outside and wanted to ask him to escort them home. S.C. told his friend, "Don't ask him," because he was afraid of what Orozco might do, but S.C.'s friend asked him anyway.[5] Orozco then escorted

_____

[5] On cross-examination, S.C. admitted that, at his friend's urging, S.C. approached Orozco, but that during the conversation, the friend "jumped in" and asked, "Can you just walk with me?"

- 3 -

the children outside the community pool area. After S.C.'s friend left to go home, Orozco brought S.C. to a nearby large tree surrounded by shrubbery. Orozco took off both of their pants and put his penis "in [S.C.'s] butt." After the assault, S.C. went home and showered, because he "felt dirty."

S.C. testified to yet another incident when Orozco "grabbed" S.C. off the sidewalk and "pulled" him inside Orozco's home. No one else was home. Orozco removed his clothes and placed S.C. face down on his stomach on the couch in the living room. Orozco removed S.C.'s pants and "started putting his penis in [S.C.'s] butt." When the Commonwealth asked if Orozco was actually "able to put his penis into [S.C.'s] butt," S.C. answered, "Yes."

Another assault started when S.C. was outside riding his bike, alone. As S.C. walked his bike past Orozco, Orozco "grabbed" S.C., pulled him into the backyard of a nearby unoccupied home, and "put S.C. into a shed." Orozco pulled down both of their pants, turned S.C. around, and "put his penis in [S.C.'s] butt."

Although S.C. could not provide specific details of other assaults, he estimated that Orozco had "put his penis in [S.C.'s] mouth" 15 times. Orozco often "hid[] his truck" at an isolated parking spot near the community pool and assaulted S.C. there. S.C. did not report the assaults because he "was scared." When asked why he was scared, S.C. said, "I don't know. I just was scared if like anything else bad would happen." S.C. admitted on cross-examination that his mother had instructed him to tell her "if anything happened" and that she would protect him when the abuse started. But on re-direct, S.C. explained that he "was not comfortable talking to her" about the assaults. S.C. ultimately reported the abuse in August 2020.

After hearing this evidence, the trial court granted Orozco's motion to strike one of two attempted anal sodomy charges because S.C. testified only to one incident where Orozco

- 4 -

attempted—but failed—to commit anal sodomy. But the trial court denied Orozco's motion to strike the remaining charges.[6]

Orozco then testified and denied having any sexual contact with S.C. When asked about the incident when S.C. was in kindergarten, Orozco claimed that S.C. spontaneously climbed into his vehicle, he made S.C. leave, but S.C. soon re-entered. Orozco claimed that after he made S.C. exit the vehicle a second time, S.C.'s mother became upset and threatened to call the police.

After the close of the evidence, the trial court denied Orozco's renewed motion to strike. Following argument and instructions, the jury convicted Orozco of one count of sodomy by anal intercourse, one count of sodomy by fellatio, and one count of attempted sodomy by anal intercourse.[7]

Orozco then moved to set aside the jury's verdict, arguing that S.C.'s testimony was inherently incredible as a matter of law. Orozco later supplemented his motion, adding an argument that S.C.'s testimony of "in the butt" did not prove actual anal penetration. The trial court denied Orozco's motion and sentenced him to 20 years of concurrent incarceration on both sodomy convictions, and 10 years of concurrent incarceration on the attempted sodomy conviction. Orozco appeals.

## ANALYSIS

On appeal, Orozco again claims that S.C.'s testimony was inherently incredible as a matter of law, and, even accepting S.C.'s testimony, that the evidence was insufficient to prove anal penetration. We turn first to S.C.'s credibility.

---

[6] On November 16, 2020, a grand jury indicted Orozco on one count of sodomy by anal intercourse, two counts of attempted sodomy by anal intercourse, and three counts of sodomy by fellatio. The three fellatio charges concerned incidents starting when S.C. was in the fourth grade; the Commonwealth acknowledged at trial that S.C.'s testimony about the kindergarten forced fellatio incident would not support a conviction.

[7] The jury acquitted him of the remaining two sodomy by fellatio charges.

I.  S.C.'s Credibility

Orozco argues that S.C.'s testimony was inherently incredible because (1) he did not timely report the sexual abuse, (2) his testimony lacked corroboration, and (3) his testimony was "contrary to human experience."  He thus claims that the trial court should have set aside the jury's verdicts on all his convictions.  We disagree.

The "conclusions of the fact finder on issues of witness credibility 'may only be disturbed on appeal if this Court finds that [the witness's] testimony was "inherently incredible, or so contrary to human experience as to render it unworthy of belief."'"  *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011) (quoting *Robertson v. Commonwealth*, 12 Va. App. 854, 858 (1991)).  "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'"  *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

But "[a] legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness'[s] testimony or statements."  *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019).  We have held that "[t]estimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law."  *Id.*  That is also the case here.  Although there were perhaps inconsistencies in S.C.'s accounts, all of Orozco's arguments as to why S.C.'s testimony was inherently incredible fail.

First, a "victim's failure to immediately report the incident d[oes] not render his testimony inherently incredible as a matter of law."  *Corvin v. Commonwealth*, 13 Va. App. 296, 299 (1991); *see also Love v. Commonwealth*, 18 Va. App. 84, 90 (1994) (holding that a seven-year delay in reporting did not render the victim's testimony inherently incredible).  This

is because we have recognized that "fear of disbelief by others and threat of further harm from the assailant" are circumstances that are "all too common" in sexual assault cases and may explain delays in reporting such abuse. *Woodard v. Commonwealth*, 19 Va. App. 24, 28 (1994). It was therefore "up to the [factfinder] to determine what effect, if any, the delay" in reporting the abuse had on its assessment of S.C.'s credibility. *Love*, 18 Va. App. at 90. Indeed, "[t]he credibility of the witnesses and the weight to be accorded their testimony lies *wholly within the purview of the jury*." *Fordham v. Commonwealth*, 13 Va. App. 235, 240 (1991) (emphasis added).

At the time of the offenses, S.C. was a kindergarten- to fifth-grade-aged child. He explained that he did not immediately disclose the assaults to anyone because he "didn't know what to do after" and he "was scared if like anything else bad would happen." *See, e.g.*, *Corvin*, 13 Va. App. at 299 (rejecting the argument that the victim's failure to immediately report the assault did not render his testimony inherently incredible because his "youth, fright and embarrassment" gave the jury an acceptable explanation for his behavior). He later added that he "was not comfortable talking to [his mother]" about the assaults. S.C.'s mother also testified that S.C. once told her that Orozco touched S.C.'s penis, but Orozco denied the accusation and said S.C. was lying. S.C.'s mother threatened to call the police if it ever happened again, but, despite continued abuse, that never happened and Orozco faced no consequences until S.C. reported the abuse years later. This evidence gave the jury reasonable explanations for S.C.'s delayed reporting.

In all, it was for the jury to weigh S.C.'s credibility based on his statement that he feared something bad would happen if he reported the abuse, his vulnerability, and the other evidence in the record. *Juniper*, 271 Va. at 415; *Love*, 18 Va. App. at 90.

Second, evidence to corroborate S.C.'s testimony is not required. "[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" *Id.* at 88 (alteration in original) (quoting *Garland v. Commonwealth*, 8 Va. App. 189, 192 (1989)). To be sure, no witness directly observed Orozco sexually abusing S.C.[8] But S.C. testified that Orozco forced him into secluded areas and even intentionally parked his truck in places away from the public view to commit his assaults. Again, it was the jury's purview to accept or reject this testimony and resolve any credibility issues. *See Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) ("Where credibility issues are resolved by the [factfinder] in favor of the Commonwealth, those findings will not be disturbed on appeal unless plainly wrong.").

Third, and finally, Orozco's argument that S.C.'s testimony was "contrary to human experience" is unpersuasive. There is no requirement that a sexual assault victim cry out, fight back, or be seen "crying, acting fearful, or in distress" to be credible. *See* Code § 18.2-67.6 ("The Commonwealth need not demonstrate that the complaining witness cried out or physically resisted the accused in order to convict the accused of an offense under this article . . . ."). Nor must the victim successfully avoid all interaction with his abuser to be believed.[9] And although

---

[8] We note, however, that S.C.'s mother partially corroborated S.C.'s account of Orozco's assault when he was in kindergarten. S.C.'s mother saw S.C. exiting Orozco's vehicle, became suspicious of abusive activity, and even confronted Orozco after S.C. told her Orozco touched "his parts."

[9] Orozco adds that "continu[ing] to reside next door to Mr. Orozco for years while the alleged abuse was ongoing" further supports his argument that S.C. was inherently incredible. To suggest that the credibility of an elementary school-aged child depends, even in part, on continuing to live in the vicinity of his abuser or his ability to move away is nonsensical.

Orozco elicited testimony that the neighborhood and other community areas were often busy, S.C. explained that Orozco assaulted him in areas shielded from public view. The jury here, as it had a right to do, judged S.C.'s testimony and found that his behavior before, during, and after each assault was not contrary to human experience. Nothing in the record suggests that this finding was plainly wrong.

In summary, nothing about S.C.'s testimony that Orozco sexually abused him for years was "so contrary to human experience as to render it unworthy of belief." *Lopez v. Commonwealth*, 73 Va. App. 70, 84 (2021) (quoting *Kelley*, 69 Va. App. at 626). Although Orozco points to inconsistencies in S.C.'s account between the investigation and his trial testimony, any inconsistency in witness testimony is "'resolved by the fact finder,' not the appellate court." *Kelley*, 69 Va. App. at 626 (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)). "When the law says that it is for triers of the facts to judge the credibility of a witness, the issue is not a matter of degree." *Towler*, 59 Va. App. at 291 (quoting *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989)). "If the trier of the facts sees fit to base the verdict upon [the] testimony [at issue] there can be no relief in the appellate court." *Id.* (quoting *Swanson*, 8 Va. App. at 379). In exercising its role as the factfinder, the jury here weighed the evidence and resolved any inconsistencies in the Commonwealth's favor. In doing so, the jury necessarily rejected Orozco's theory of innocence and found S.C. to be a credible witness. And the trial court found the same when it denied Orozco's motion to set aside the verdict. We find no error in either determination because S.C.'s testimony was not so manifestly false or contrary to human experience that reasonable persons ought not to believe it.

## II. Sufficiency of the Evidence

Orozco also challenges the sufficiency of the evidence to support his sodomy by anal penetration conviction. He contends that the Commonwealth's evidence did not sufficiently prove penetration of S.C.'s anus. We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Grimaldo v. Commonwealth*, 82 Va. App. 304, 320 (2024) (alteration in original) (quoting *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020)). We do not ask ourselves whether we believe that the trial evidence established guilt beyond a reasonable doubt. *Secret v. Commonwealth*, 296 Va. 204, 228 (2018). Rather, we ask whether, "upon review of the evidence in the light most favorable to the prosecution," *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017), "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

"An appellate court may neither find facts nor draw inferences that favor the losing party that the factfinder did not. This remains so even when the factfinder *could* have found those facts or drawn those inferences but, exercising its factfinding role, elected not to do so." *Commonwealth v. Garrick*, 303 Va. 176, 182 (2024). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

For sodomy under Code § 18.2-67.1, "the Commonwealth has the burden to prove beyond a reasonable doubt that penetration, however slight, has occurred." *Welch v. Commonwealth*, 271 Va. 558, 563 (2006); *see also* Model Jury Instrs.—Crim. No. 48.460

("Mere touching of the penis to the [anus] is not sufficient."). Orozco argues that even if a factfinder accepted S.C.'s testimony, S.C.'s statement that Orozco put his penis "in [S.C.'s] butt" does not prove anal penetration. He asserts that S.C. never defined "in" or "butt" in his testimony, so the testimony was not specific enough to establish penetration.[10] We are unpersuaded.

We first note that neither "in" nor "butt" are terms of art and each has a commonly understood meaning. In any event, when recounting one of the assaults, S.C. testified that Orozco "tried to put his penis in [S.C.'s] butt" but could not because S.C. was "too little"; S.C. thus specified that Orozco put his penis "on" S.C.'s butt, rather than "in" it, and that Orozco's penis was "touching" his butt. But when discussing three other assaults, S.C. said that Orozco put his penis "in my butt." In fact, S.C. answered "Yes" when the Commonwealth asked if Orozco was able to "put his penis *into* [S.C.'s] butt." (Emphasis added). Put simply, S.C. differentiated between "in," and another incident when Orozco only touched his penis "on" S.C.'s butt because it could not "fit." *Cf. Ashby v. Commonwealth*, 208 Va. 443, 444 (1968) (finding that the victim's testimony using the word "on," rather than "in," did not establish penetration). Moreover, Orozco's counsel on cross-examination helped clarify what S.C. understood "butt" to mean in this context:

> Q.    The prosecutor then asked you, "I'm sorry, [S.C.] I
>       apologize. But I had a hard time hearing what you said he

---

[10] Although there is no reported appellate case in Virginia that addresses this particular phrase in the context of a criminal conviction for anal penetration, we need not decide if the phrase alone is sufficient to uphold Orozco's convictions because S.C.'s testimony in this case provided more. But other courts have found that the phrase, "in the butt," has a common meaning from which a juror could infer anal penetration. *See People v. Gutkaiss*, 614 N.Y.S.2d 462, 466 (App. Div. 1994) (finding that "in the butt" has a basic meaning of anal penetration that would justify a related conviction), *rev'd on other grounds*, 759 N.Y.S.2d 246 (App. Div. 2003); *Ahmed v. Kelly*, No. 1:10cv184 (GBL/TCB), 2012 U.S. Dist. LEXIS 141908, at *27-28 (E.D. Va. Sept. 25, 2012) (same); *Vickery v. Commonwealth*, No. 2022-SC-0554-MR, 2024 Ky. Unpub. LEXIS 25, at *5-6 (Ky. Mar. 14, 2024) (same).

did exactly." You said, "He pulled me, like against his penis in the bottom, but he never put it where I did number two."

Do you recall making that statement that he did not put it where you do number two?

A.     No.

. . . .

Q.     And you recall that you said he was just rubbing it; do you recall?

A.     I don't recall.

Q.     You don't recall, but today you're saying that he did put it where you go number two?

A.     Yes.

In other words, S.C. confirmed that Orozco put his penis "where [S.C.] go[es] number two."[11] This testimony further reinforces the implication that S.C. understood, and distinguished between, "in his anus" and "between his buttocks."

Viewing the evidence in the light most favorable to the Commonwealth, the reasonable inference a juror could draw from S.C.'s testimony was that Orozco anally penetrated S.C., given S.C.'s distinction between "in" and "on." To support that inference, S.C. also confirmed that "in" meant "into" his butt and that his butt was where he went "number two." Hearing this testimony, a reasonable juror could infer that Orozco attempted, and later committed, anal penetration of S.C. We therefore find no error in the trial court's denial of Orozco's motion to set aside the verdict.

---

[11] Collins English Dictionary defines "number two" euphemistically as "the act or instance of defecation" and "defecation: used esp[ecially] by or with reference to children." *Number two*, *Collins English Dictionary*, https://www.collinsdictionary.com/dictionary/english/number-two (last visited Aug. 4, 2025).

## CONCLUSION

For these reasons, we affirm the circuit court's judgment.

*Affirmed.*